# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00010-CR
NO. 03-04-00011-CR
NO. 03-04-00012-CR

**Daniel Williams, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. 3031132, 2032066 & 2032067, HONORABLE BOB PERKINS, JUDGE PRESIDING[1]**

**O P I N I O N**

Appellant Daniel Williams appeals his convictions for aggravated assault with a deadly weapon, possession of cocaine in an amount of less than one gram, and robbery. Appellant waived trial by jury and entered pleas of guilty to the three offenses before the trial court. The trial court found the enhancement allegations in the aggravated assault and robbery indictments to be true as confessed by appellant, and assessed a punishment of fifty-five years' imprisonment in each of these cases. The trial court assessed punishment for the possession of cocaine at one year in a state jail facility. All true sentences were ordered to be served concurrently. Notice of appeal was filed in all three cases. Different counsel was appointed on appeal.

---

[1] Honorable Fred Moore, a visiting judge, presided over the jury trial on competency to stand trial prior to the entry by appellant of the guilty pleas before Judge Perkins.

**Points of Error**

Appellant advances ten points of error, most of which relate to a pretrial competency to stand trial hearing before a jury. On November 18, 2003, the jury returned a verdict finding appellant competent to stand trial. First, appellant challenges the *factual* sufficiency of the evidence to support the jury's verdict at the competency hearing. Second and third, appellant urges that the trial court committed *fundamental* error when at the competency hearing it twice impermissibly commented on the weight of the evidence. Fourth, appellant complains of the admission of Officer Shawn Lapuszynski's "expert" opinion testimony at the competency hearing. Fifth, appellant argues for a number of reasons that the trial court erred in admitting into evidence at the competency hearing his pro se motion to substitute counsel. Sixth, appellant asserts that the trial court erred in excluding at the competency hearing his application for the appointment of a guardian containing allegations that the probate court later acted upon favorably.

Seventh, turning to the trial itself, appellant contends that the trial court failed to *sua sponte* withdraw appellant's pleas of guilty when the evidence of appellant's incompetency became overwhelming "at punishment." Eighth, appellant asserts it was error to introduce evidence of the victim's injuries and photographs of the crime scene pertaining to a prior conviction alleged for enhancement after he had pleaded "true" to such allegations. Ninth, appellant urges that the cumulative effect of all the errors violated due process of law under the United States Constitution. Tenth, appellant complains that the two sentences of fifty-five years' imprisonment constitute cruel and unusual punishment in violation of Texas law and the Eighth Amendment to the United States Constitution, or in the alternative, that the evidence of mental illness adduced "at punishment" mitigated his conduct and required the imposition of lower sentences.

## Background

At about 2 a.m. on May 30, 2003, Annette Harris was awakened by a knocking on the front door of her house in Travis County. When the knocker identified himself as "Dee Dee," an acquaintance of Harris's, she opened the door. Appellant and another man barged in. Appellant threatened Harris and demanded money. She gave him money. Appellant then tried to kiss her and pulled her into a bedroom, squeezing her neck with his arm. Harris was choked until she lost consciousness. When Harris regained consciousness, she was on the living room couch in her nightgown, and her face was swollen and bloody. No rape examination was performed at the hospital where she was treated. Harris had no recollection of any sexual encounter but she later developed a sexually transmitted disease. These facts lead to the robbery charge to which appellant pleaded guilty.

On the same morning at about 3 or 4 a.m., appellant and his girlfriend appeared at the apartment of Timothy McCraney. McCraney had once lived for a time with appellant and his mother and considered appellant his "brother." Appellant and his girlfriend had earlier been invited by McCraney to stay overnight at the one bedroom apartment. However, they arrived with another couple. McCraney found that the other couple was still there when he awakened. Tracy, McCraney's girlfriend, came to the apartment later that morning. McCraney explained to appellant that the apartment was subsidized by "a section 8 program" and he was concerned about too many people being there. Appellant became nervous and upset. He punched Tracy in the head and McCraney in the face. Appellant was worried that they might call the police. Appellant forced Tracy into a closet where he and another male tried to strangle her. Appellant explained that he was only trying to put Tracy to sleep so she would not call the police. Eventually, appellant stabbed

3

McCraney in the knee with a knife and threatened to kill McCraney and Tracy because "he didn't want to leave any witness behind." Later, when McCraney was trying to escape, he was stabbed in the shoulder and neck by appellant with scissors. When McCraney broke a window, appellant and the other man ran away. These actions by appellant formed the basis of the aggravated assault charge.

After the assaults upon McCraney and Tracy, appellant was arrested during his attempted escape from the police. Appellant told the arresting officer that he had intended to kill McCraney and regretted not finishing the job, and that he should have killed "the bitch." The arresting officer later learned that appellant had a rock of crack cocaine in his watch pocket.

## Competency to Stand Trial

### *Factual Sufficiency*

In his first point of error, appellant claims that the evidence at the pretrial hearing was factually insufficient to support the jury's finding that appellant was competent to stand trial. Thus, appellant argues that he was incapable of entering valid guilty pleas and that the judgments of conviction must be reversed.

Prior to trial, appellant was accorded a hearing on the issue of competency to stand trial before a jury. The proceedings were conducted under the provisions of Article 46.02 of the Code of Criminal Procedure in effect at the time (November 17-18, 2003).[2] Article 46.02 has now

---

[2] As amended, Act of May 26, 1999, 76th Leg., R.S., ch. 561, 1999 Tex. Gen. Laws 3092, amended by Act of May 23, 2001, 77th Leg., R.S., ch. 828, § 3; 2001, Tex. Gen. Laws, 1650, 1652-53.

been repealed. *See generally* Chapter 46B, Tex. Code Crim. Proc. Ann. (West Supp. 2005) (effective January 1, 2004).

Article 46.02, section 1A in effect at the time provided:

(a) A person is incompetent to stand trial if the person does not have:

    (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or

    (2) a rational as well as a factual understanding of the proceedings against the person.

(b) A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence.

Act of May 26, 1999, 76th Leg., R.S., ch. 561, 1999 Tex. Gen. Laws 3092 (repealed). (Current version at Tex. Code Crim. Proc. Ann. art. 46B.003 (West Supp. 2005)).

Section 4(a) of article 46.02 in effect at the time provided:

If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be empaneled to determine the defendant's competency to stand trial. The determination shall be made by a jury that has not been selected to determine the guilt or innocence of the defendant.

Act of May 26, 1999, 76th Leg., R.S., ch. 561, 1999 Tex. Gen. Laws 3092 (repealed). (Current version at Tex. Code Crim. Proc. Ann. art. 46B.651 (West Supp. 2005)).

The jury proceedings under article 46.02 were civil in nature. *Parker v. State*, 667 S.W.2d 185, 187 (Tex. App.—Texarkana 1983, pet. ref'd). In a competency hearing before a jury, a defendant has to overcome the presumption of competency and has the burden of proving

5

incompetency by a preponderance of the evidence. *Id*. at 187. The jury is the judge of the credibility of the witnesses at the competency hearing and the weight to give to the testimony. The jury accept or reject all or any of a witness's testimony. It is the exclusive province of the jury to resolve conflicts. *Westbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *Clark v. State*, 47 S.W.3d 211, 215 (Tex. App.—Beaumont 2001, no pet.); *Parker*, 667 S.W.2d at 187.

At the conclusion of testimony in the competency hearing, the trial court charged the jury in accordance with article 46.02 and the applicable law. The jury returned its verdict finding appellant competent to stand trial.

### The Standard of Review

Now on appeal following his convictions, appellant challenges the factual sufficiency of the evidence to support the jury's verdict at the competency hearing. Appellate review of the factual sufficiency of the evidence to support a jury's finding that a defendant is competent to stand trial is governed by the following standard:

> [W]hen the courts of appeals are called upon to exercise their *fact jurisdiction*, that is, examine whether the appellant proved his affirmative defense or other fact issue where the law has designated that the defendant has the burden of proof by a preponderance of evidence, the correct standard of review is *whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust*.

*Meraz v. State*, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990) (emphasis added); *see also Clark*, 47 S.W.3d at 215; 42 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 26.122 (2d ed 2001).

6

The Texas Supreme Court held in *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002), that under traditional factual sufficiency standards in civil cases, a court determines if a finding is so against the great weight and preponderance of evidence that it is manifestly unjust, shocks the conscience or clearly demonstrates bias. (Citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

**Evidence at the Competency Hearing**

With this background, we turn to the evidence presented at the competency hearing. At the request of appellant's attorney, Dr. Kevin McFarley, a psychologist, met with appellant about two months before the November 2003 competency hearing. Appellant refused to take any tests and was uncooperative. Thus, appellant and the psychologist "chatted for a while." Dr. McFarley had examined appellant in 1994 almost nine years previously when appellant was seventeen years old. The examination was at the request of the Child Protective Services to evaluate appellant's intellectual and cognitive functioning, not appellant's competency to stand trial. Dr. McFarley, after administering several tests, concluded that appellant had an intermittent explosive disorder, an attention deficit hyperactivity disorder, post-traumatic stress disorder, and mild mental retardation. Dr. McFarley was concerned about the records revealing appellant's I.Q. tests ranging from 59 to 72. Probate court records were introduced while Dr. McFarley testified. These 1995 records showed appellant's sister was appointed his guardian after he was determined to be a "partially incapacitated person."

Dr. McFarley expressed his opinion that appellant did not have sufficient present ability to consult with his attorney with a reasonable degree of rational understanding. He further

7

believed that appellant had a factual understanding of the charges against him, below the understanding of a person with Down's Syndrome, although appellant did not have that disorder. Dr. McFarley also testified that appellant (1) understood that he was in serious trouble, and had a basic understanding "of what's going on"; (2) knew he was accused of "bad things"; and, (3) having served time in prison, knew the consequences of losing. Dr. McFarley related that appellant had a very basic understanding of the roles of a judge, prosecutor, and defense counsel.

Despite his earlier testimony about appellant's inability to consult with his attorney, Dr. McFarley stated that appellant knew the name of each charge against him and had the ability to discuss the facts of his case, and had given a complete confession. Dr. McFarley revealed that appellant was educable about certain courtroom matters if they were explained to him. He did not believe that appellant could read or write. Dr. McFarley noted that appellant had an ability to recall people's names and telephone numbers. Appellant remembered Dr. McFarley in 2003 as the man who gave him candy bars back in 1994. Dr. McFarley acknowledged that only five percent of his work was in the realm of forensic psychology.

Dorothy Elaine Thomas, appellant's sister, testified that there was mental retardation in the family, at age five appellant had been abused by his brother, and that there had been a hanging incident when appellant was eight years old. Mrs. Thomas reported that appellant had been taken out of public schools and placed in a psychiatric unit and sent to different facilities until he was seventeen years of age. She testified that appellant finished "the 11th grade of school" and that he could write and had written letters to her. Mrs. Thomas stated that it was difficult to communicate with appellant, but he could understand a matter if it was explained to him "point by point."

8

The State called Dr. Richard Coons, a psychiatrist, who had evaluated over 7,000 adults for competency to stand trial and related issues for a period of thirty years. Dr. Coons first saw appellant on June 4, 1997, in connection with an earlier criminal charge. At that time, he found appellant competent to stand trial. Dr. Coons again saw appellant on July 12, 2003, in connection with the instant charges. Thereafter, Dr. Coons issued a report finding appellant competent to stand trial. In October 2003, Dr. Coons once again met with appellant. He found no reason to change his mind as to appellant's competency. He believed that appellant's intelligence was in the low average range and suspected that appellant might have a learning disability. Dr. Coons did not believe that appellant could read or write.

At each of Dr. Coons's examinations, appellant was oriented to time, place, and person. Appellant was responsive to questions, attentive to discussions, and his concentration was good. Dr. Coons noted that appellant knew the names of the 2003 offenses and what behavior resulted in the charges; he also knew the name of his attorney. At the hearing on competency, Dr. Coons explained his opinion was not based solely on the three examinations, but also on a review of appellant's Austin State Hospital records, the instant offense reports, the prison records, the Travis County jail medical records, and appellant's videotaped confession.

Without objection, Dr. Coons also reported that he had talked to a jailer and appellant's 1997 counsel, both of whom felt that appellant was competent to stand trial. Dr. Coons disagreed that appellant was "moderately mental retarded." He stated, "[w]hen I think of mental retardation, I don't think of Daniel Williams." He believed that Dr. McFarley relied too heavily on the I.Q. scores.

9

Dr. Jerome Schmidt, a psychologist in charge of all forensic work for the Travis County Probation Department, testified for the State. A psychological evaluation of appellant was made in 1997 under Dr. Schmidt's supervision, not to determine competency, but to formulate a treatment plan for probation. Dr. Schmidt addressed the variance in appellant's I.Q. scores (59 to 72) and attributed it to appellant's level of motivation and willingness to participate. Dr. Schmidt stated that a person of normal intelligence could score as mentally retarded by not answering questions or saying, "I don't know the answer to that."

Dr. Schmidt, who had not personally examined appellant, testified that appellant's medical records reflected inconsistent symptoms that suggested malingering or faking symptoms for a secondary gain or to go to a hospital. Dr. Schmidt believed appellant was competent to stand trial.

Austin Police Officer Shawn Lapuszynski was a "mental health officer" for the police department. He had completed a forty-hour course of special training in dealing with people with mental health issues. On May 30, 2003, while on patrol, Lapuszynski arrived at the scene of a crime, saw appellant run away, apprehended him and returned to the scene, and waited near a patrol car with appellant as other officers performed their duties. Officer Lapuszynski saw no indication appellant suffered from any mental illness. Appellant made certain comments and asked questions indicating that he had some knowledge about the criminal justice system. Appellant asked if the victim was giving information to the police. He knew that might mean trouble for him. Appellant indicated that he knew that he had committed a crime, the severity of the crime, and that he could be assessed a long time in jail. Appellant asked Lapuszynski's opinion as to how long he might have to serve, and stated that he knew that doing certain things might make the judge "go easy on him."

10

In order to show appellant's knowledge of the justice system, the State also introduced appellant's handwritten *pro se* motion to dismiss appointed counsel in the pending criminal cases. Appellant's sister testified that neither the handwriting nor the signature was appellant's.

We find a conflict in the evidence on competency to stand trial which was resolved by the jury. Appropriate deference should be accorded the fact-finder's role. *See Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In considering all the evidence in a neutral light, *Clewis v. State*, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996), we conclude that the jury's verdict was not so against the great weight and preponderance of the evidence so as to be manifestly unjust, shocking to the conscience or demonstrating bias. *See In re C.H.*, 89 S.W.3d at 25. Appellant's first point of error is overruled.

**Comment on Weight of the Evidence**

In the second point of error, appellant contends that the trial court committed fundamental error when it impermissibly commented on the weight of the evidence by allowing the jury to hear its remarks to defense counsel who was continuing to object after a hearing in the jury's absence.

At the competency hearing, the trial court, at the State's suggestion, heard the testimony of Austin Police Officer Lapuszynski in the absence of the jury. The evidence was essentially the same as described in the earlier sufficiency discussion. The trial court overruled appellant's objection that the officer's testimony was inadmissible because appellant was in custody at the time of his comments, that Lapuszynski did not have a degree in psychiatry or psychology, and only had limited training as a mental health officer for the police department.

11

After the jury was returned to the courtroom, defense counsel asked to approach the bench. The record then reflects:

Ms. Craven [defense counsel]: I think you said that he could answer those questions, but what about his identification and it's a person with mental health problems? I really don't think he's a qualified expert for that kind of testimony.

The Court: Is he giving—I don't have any problems with that, a lay person talking about stuff. Did he give you anything that made you think he's off the rocker or not. That's all she's asking.

Ms. Craven: Okay.

There was no trial objection to the court's statements and nothing is presented for review. *See* Tex. R. App. P. 33.1(a). Appellant has waived error. *Nunez v. State*, 117 S.W.3d 309, 319 (Tex. App.—Corpus Christi 2003, no pet.). Appellant candidly concedes this point, but claims that there was fundamental error. *See* Tex. R. Evid. 103(b).[3] We do not agree.

It was appellant's counsel who, having approached the trial court in the jury's presence, continued to object and to seek clarification of a ruling made in the jury's absence. The trial court's statements were in response to the defense inquiry. The trial court in effect was informing defense counsel that he was applying Rule 701 (Opinion Testimony by Lay Witnesses) of the Rules of Evidence. The trial court's second statement appeared to refer to the question the prosecutor would be asking an unnamed witness. The trial court's remarks were awkwardly worded.

---

[3] "In a criminal case, nothing in these rules preclude taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court." Tex. R. Evid. 103(d).

12

Taken alone and outside the context of the earlier hearing, the statements would have little meaning for the lay jurors if they did in fact hear the remarks. Great caution should be exercised by trial courts to avoid misinterpretation by jurors of the court's remarks even in rulings on evidentiary matters.

The statement here did not reflect the trial court's personal opinion on the competency issue or reflect that the court was partial. We do not conclude that the trial court commented on the weight of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979). The facts of this case are clearly distinguishable from those in the plurality opinion in *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000). The second point of error is overruled.

### Another Comment

In the third point of error, appellant asserts that the trial court committed fundamental error when it impermissibly commented on the weight of the evidence. Appellant complains that at the competency hearing and during the examination of appellant's expert witness, the trial court stated that the testimony being elicited was "not the law in the state of Texas."

At the competency hearing, Dr. McFarley, on direct examination, identified a list of twenty-one items that had been faxed to him by defense counsel; observed that the list was "some criteria for competency to stand trial" from a professional group called "Advancement for Psychiatry"; and he stated that the different criteria came from different countries, different places, different states, and included different ways to consider the criteria. Dr. McFarley explained the group was trying to be at the most progressive cutting edge of its field. Dr. McFarley stated that he had not used the list in his evaluation of appellant, but it was important because the list was a kind

13

of general guideline or outline that experts are saying should be considered and are "things you have to consider." At this point, the trial court asked to examine the list. The record reflects:

| The Court: | That is not the law in the State of Texas. If it is something he uses as a psychologist to—and he's going to tell us what he assesses this person with by that, but it is not the law in the state of Texas. That is not the law. The law I will give. We've already given it to them. If he wants to say this is the things I looked at and this is law I apply it to this case, that's fine. |
| --- | --- |
| Ms. Craven [defense counsel]: | That's what I was going to ask him about. |
| The Court: | But it is not the law in the State of Texas. |

Thereafter, the trial court told defense counsel that she would never get the list admitted into evidence, but the witness could use it as earlier described. Counsel was then instructed to scratch off the "top part" where there was an inference that the list may be the law. The trial court, at the State's request, ordered the list be shown to the State before it was offered. Appellant's counsel claimed that the list at the time had not been offered. The court responded, "Yeah, but you've shown it to them so they already got the benefit of it."

Defense counsel then continued her examination of Dr. McFarley. The list was never offered. As appellant concedes, there was no objection to the trial court's remarks that this is not the law in Texas. Any error was waived and nothing is presented for review. *See* Tex. R. App. P. 33.1(a). There is no quarrel that the trial court later properly instructed the jury on the applicable Texas law in its jury charge.

14

"It is axiomatic that the court should instruct the jury on the law, and not anyone else." *Powers v. State*, 737 S.W.2d 53, 54 (Tex. App.—San Antonio, 1989, pet. ref'd). "Generally a correct statement of the law by the trial court, even during trial, is not a comment on the weight of the evidence." *Aschbacher v. State*, 61 S.W.3d 532, 539 (Tex. App.—San Antonio 2001, pet. ref'd). The trial court may declare in the jury's presence that a statement is "not the law." *Eckert v. State*, 672 S.W.2d 600, 604 (Tex. App.—Austin 1984, pet. ref'd). Likewise, a trial court may even correct a misstatement of testimony during a trial. *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). There was no preservation of error but if there had been the statements of the trial court were not comments on the weight of evidence under article 38.05. Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979).

We reject appellant's claim that in the interest of justice, even without an objection, reversible error was demonstrated in light of *Blue*, 41 S.W.3d at 131. While trial courts should carefully word their remarks in the jury's presence and restrain from making unnecessary statements, no error is presented here. The third point of error is overruled.

**Admission of Evidence Under Rule 701**

In the fourth point of error, appellant contends that he "was harmed when the trial court erroneously [admitted] the opinion testimony of Shawn Lapuszynski of the Austin Police Department." Appellant argues that Officer Lapuszynski was not qualified as an expert witness under Rule 702 of the Rules of Evidence and should have not been allowed to testify. Appellant claims that he was harmed when the officer testified before the jury at the competency hearing that when the officer encountered appellant on May 30, 2003, appellant did not display any of the traits

15

the officer was trained to look for in a person suffering from some mental illness. Further, he claims the court erred in permitting the officer to say that he did not "see any indication from Mr. Williams that he suffered from any mental illness."

As observed earlier, the State asked to examine Lapuszynski in the absence of the jury. In a series of unobjected-to leading questions the State established the officer's encounter with appellant on May 30, 2003, and that Lapuszynski was a "mental health officer" for the police department having completed a forty-hour training course. The officer testified that appellant did not exhibit any signs characteristic of someone having a mental health issue. Lapuszynski was not interrogated by appellant's trial counsel except in the midst of an objection inquiring whether the officer had a degree in psychology or psychiatry to which a negative answer was given.

Appellant subsequently objected to the officer's testimony on the basis of relevancy, that he was not a mental health expert, and on the basis of Rule 403 of the Texas Rules of Evidence. These objections were overruled. The officer testified before the jury. He was not cross-examined.

Although it was not expressly stated, it is clear from the record that the trial court admitted Officer Lapuszynski's testimony under Rule 701 of the Texas Rules of Evidence.

Rule 701 (opinion testimony by lay witnesses) provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Section (a) has been said to have two elements. *Harnett v. State*, 38 S.W.3d 650, 657-59 (Tex. App.—Austin 2000, pet. ref'd). The first element involves the personal knowledge of the

16

witness as required by Rule 602. Tex. R. Evid. 602. The necessary personal knowledge may be gained by perception of fact by the senses of the witness. *Harnett*, 38 S.W.3d at 658. The second element mandates that the opinion must be one that a reasonable person could draw from the underlying facts. *Id*. The requirements of section (b) of Rule 701 are clear. Under Rule 701 much must be left to the discretion of the trial court. *Harnett*, 38 S.W.3d at 658; *Austin v. State*, 794 S.W.2d 408, 410 (Tex. App.—Austin 1990, pet. ref'd).

> [I]f the witness perceived events and formed an opinion that a reasonable person could draw from the facts then the first part of the rule is met. If the opinion is also helpful to the trier of fact to understand the witness's testimony or aids in the determination of a fact in issue, then the opinion is admissible under Rule 701.

*Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2003).

It is evident from the record that Lapuszynski's testimony was not of a scientific or technical nature, but was a patrol officer's opinions or inferences based on impressions and conclusions derived from perceptions of what he saw, heard, and observed during his encounter with appellant on May 30, 2003, in light of his experience and training. *See Harnett*, 38 S.W.3d at 659. The opinion testimony based on events only five and a half months before the competency hearing was an aid in the determination of the fact issues before the jury.

The fact that the on-duty patrol officer had been designated "mental health officer" after attending a forty-hour course on mental health did not require that his testimony be admissible only as an expert witness under Rule 702. What was said in *Osbourn* is pertinent here:

> A distinct line cannot be drawn between lay opinion and expert testimony because all perceptions are evaluated based on experiences. *However, as a general rule,*

17

*observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience or training.* Additionally, even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert. The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge. *It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert.*

*Osbourn*, 92 S.W.3d 531, 537 (citation omitted, emphasis added).

A trial court's decision to permit a witness to testify as a lay witness under Rule 701 will not be disturbed on appeal in the absence of an abuse of discretion. *Harnett*, 38 S.W.3d at 657; *Ventroy v. State*, 917 S.W.2d 419, 422 (Tex. App.—San Antonio 1995, pet. ref'd). We find no abuse of discretion by the trial court in admitting the questioned testimony under Rule 701.[4] The fourth point of error is overruled.

### Introduction of Motion to Dismiss Appointed Counsel

In the fifth point of error, appellant contends that the trial court erred in admitting into evidence State's exhibit number one, appellant's *pro se* motion to substitute counsel, because the offer violated his right to a separate competency hearing. Moreover, appellant claims that the probative value of the exhibit was substantially outweighed by the danger of unfair prejudice.

---

[4] If evidence is admissible for any purpose, the admission of that evidence must be upheld on appeal, even if that purpose was not asserted at trial and even if the trial court gave the wrong reason for admitting the evidence. *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *King v. State*, 129 S.W.3d 680, 683 (Tex. App.—Waco 2004, pet. ref'd).

State's exhibit number one, a certified copy of appellant's pro se handwritten motion to dismiss appointed counsel, was offered by the State to show appellant's rational and factual understanding of the proceedings against him. The references on the exhibit to the specific criminal charges pending against appellant were redacted by being "whited-out." Appellant contends that the exhibit published to the jury was legible enough as to the specific charges to be read by the jurors despite the "white-out." Appellant urges that the very purpose of a separate competency hearing is to allow determination of competency of the defendant to stand trial uncluttered by evidence of the offenses themselves. *Besham v. State*, 608 S.W.2d 677, 679 (Tex. Crim. App. 1988); *Cavender v. State*, 515 S.W.2d 277, 278 (Tex. Crim. App. 1974).

The difficulty with appellant's position is that he did not object on this basis when the exhibit was introduced. Appellant objected on the basis of hearsay and insufficient authentication and that objection was overruled. Where the complaint on appeal does not comport with the trial objection, nothing is presented for review. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); *Skillern v. State*, 890 S.W.2d 849, 859 (Tex. App.—Austin 1994, pet. ref'd).

In the second portion of his somewhat multifarious point of error, appellant attempts to raise a complaint under Rule 403 of the Texas Rules of Evidence. Here, again, the complaint on appeal does not comport with the trial objection, presenting nothing for review. *Ibarra*, 11 S.W.3d at 197. Because no Rule 403 objection was advanced at trial, appellant has failed to preserve any claim on appeal that Rule 403 was violated by admitting such evidence. *See Nelson v. State*, 864 S.W.2d 496, 499 (Tex. Crim. App. 1993). The fifth point of error is overruled.

**Exclusion of Guardianship Application**

In his sixth point of error, appellant claims that "the trial court erred in excluding defense exhibit one, the application for appointment of a guardian [for appellant] which contained the allegations upon which the probate court relied in its order finding appellant incompetent by clear and convincing evidence. The exclusion of the application violated appellant's sixth amendment right to present his defense."

Appellant does not direct our attention to the record reflecting the exclusion of such evidence as required. *See* Tex. R. App. P. 38.1(h). We have relied upon the State's record references. It appears that during the direct examination of Dr. McFarley at the competency hearing, he was asked to read the labels from defense exhibits one, two, and three, which were copies from the Travis County Probate Court records. When the exhibits were offered, the trial court sustained the State's relevancy objection to defense exhibit one, the guardianship application, commenting that it contained "allegations." Defense exhibit two (order appointing guardian for appellant with limited authority of person) and defense exhibit three (order dismissing guardianship proceedings) were admitted into evidence. Defense exhibit two stated in part that the probate court, *inter alia*, found "the allegations in the application to be true by clear and convincing evidence including the following: (1) [appellant] is a partially incapacitated person." This order was entered in October 1995, approximately eight years before the competency hearing. The guardianship proceedings were later dismissed because the guardian, appellant's sister, failed to qualify.

20

Rule 103(a)(2) provides:

Effect of Erroneous Ruling

(a) Error may not be predicated upon a ruling which admits or excludes evidence where a substantial right of the party is affected, and

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.

Tex. R. Evid. 103(a)(2).

Appellant does not tell us how the error of exclusion of the guardianship application was preserved for review. The State, not appellant, notes that appellant's trial counsel made an offer of proof regarding the exclusion just before the charge was given to the jury at the competency hearing and cites record page numbers. Appellant's trial counsel merely read into the record an unsworn certificate of an examination of appellant by Dr. R. Bardrick, a psychologist, dated August 2, 1995, eight years before the competency hearing. The report indicated that appellant was partially incapacitated. The guardianship application does not appear as a part of the offer of proof. It is not a part of the record prior to the charge being read to the jury. Whether Dr. Bardrick's report was a part of the guardianship application exhibit is not shown by the offer of proof. Appellant makes no effort to rely upon the incomplete offer of proof. Appellant has not met his burden of establishing what evidence he intended to offer which was excluded by the trial court. *See Kapuscinski v. State*, 878 S.W.2d 248, 249 (Tex. App.—San Antonio 1994, pet. ref'd); Rule 103(a)(2).

If it could be argued that the substance of the guardianship application was apparent from the context of the record and the trial court's ruling was erroneous, appellant must show that

21

a substantial right of his was affected by the ruling. Rule 103(a). Appellant has not briefed or even mentioned this burden. Error cannot be predicated upon a trial court's ruling that admits or excludes evidence unless a substantial right of a party is affected. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1995); *Skillern v. State*, 890 S.W.2d 849, 864 (Tex. App.—Austin 1994, pet. ref'd); Rule 103(a)(2). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 267, 271 (Tex. Crim. App. 1997) (citing *Kottrakos v. United States*, 328 U.S. 750, 756 (1946)); *see also Davis v. State*, 22 S.W.3d 8, 12 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In making this determination, we review the entire record to discern whether the error "substantially swayed" the jury or had a "substantial influence on the jury's verdict." *See Umoja v. State*, 965 S.W.2d 3, 11 (Tex. App.—Fort Worth 1987, no pet.) (op. on reh'g).

In reviewing the record, it is clear from defense exhibit two that the jury was made aware that in 1995 appellant was found by the probate court to be a partially incapacitated person based on allegations found to be true by clear and convincing evidence. This evidence, in essence, is what appellant claims was improperly excluded by the trial court. In light of the evidence admitted before the jury, we find that the exclusion of the guardianship application and the psychologist's examination, if it was a part of defense exhibit one, did not have a substantial or injurious influence on the jury's decision.

Moreover, appellant acknowledges that a finding of partial incapacitation is "not a prima facie showing of incompetency to stand trial." *Koehler v. State*, 830 S.W.2d 665, 666 (Tex. App.—San Antonio 1992, no pet.). The *Koehler* court further explained:

22

*Proceedings under the Texas Probate Code appointing guardians of persons of unsound mind and proceedings under the Texas Code of Criminal Procedure determining legal competence to stand trial are dissimilar and have different purposes.* Guardianship proceedings are designed to protect a person who is, for any reason, mentally incapable of taking care of himself or his property. Tex. Prob. Code Ann. § 114 (Vernon 1980). Proceedings to determine competency to stand trial contemplate determination of whether a defendant in a criminal action has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as a factual, understanding of the charges brought against him. Tex. Code Crim. Proc. Ann. art. 46.02 § 1 (Vernon 1979). It follows from this difference that a judicial determination finding a person mentally ill under the Probate Code does not constitute a determination of that person's mental competency to stand trial against criminal charges. *Leyva v. State*, 552 S.W.2d 158, 160 (Tex. Crim. App. 1977); *Ainsworth v. State*, 493 S.W.2d 517, 522 (Tex. Crim. App. 1973); *see also* Tex. Rev. Civ. Stat. Ann. art. 5547-83(b) (Vernon 1958) (judicial determination that person is mentally ill does not constitute determination or adjudication of mental competency).

*Koehler*, 830 S.W.2d at 666 (emphasis added).

Appellant also asserts, "The erroneous exclusion of the application deprived appellant of a fair trial and had a substantial and injurious effect or influence in determining the jury's verdict because it prevented him from presenting his defense." This complaint on appeal does not comport with any trial objection. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Appellant now claims a violation of the Sixth Amendment's right to present a defense which claim was not presented to the trial court. He merely cites *Wiley v. State*, 74 S.W.3d 399 (Tex. Crim. App. 2002). We are not told what "defense" he was prevented from presenting at the competency hearing by the exclusion of the guardianship application. Apparently, appellant contends that if this evidence had not been excluded the jury would have found him incompetent and he could not have legally entered the guilty pleas. This would have been his "defense." The exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precluded the defendant from presenting a defense. *See Potier v. State*, 68

23

S.W.3d 657, 665 (Tex. Crim. App. 2002). That did not occur here during the competency trial. Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional right to present a meaningful defense. *Potier*, 68 S.W.3d at 663. *See also Tate v. State*, 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd). The sixth point of error is overruled.

## A Duty to Withdraw Guilty Pleas?

In the seventh point of error, appellant contends that the "trial court had an independent duty to withdraw appellant's pleas of guilty as the evidence of incompetency admitted at punishment was so overwhelming that the trial court should have withdrawn the pleas of guilty." Thus, appellant argues that when his trial counsel introduced evidence, including appellant's medical records for the purpose of "consideration in punishment," the trial court should have *sua sponte* withdrawn the guilty pleas and entered pleas of not guilty.

The point of error as stated and as briefed emit mixed signals. In support of his contention, appellant twice cites "Tex. Code Crim. Proc. Ann. art. 26.12(b)" and "*Cf. Adams v. State*, 745 S.W.2d 536, 538 (Tex. App.—Houston [1st Dist.] 1988, no pet.)." These are the only authorities cited to support the point of error. The difficulty is that article 26.12 relates only to pleas of not guilty and there is no subsection (b). *Adams*, *inter alia*, was concerned at page 538 with the issue of whether trial court erred in *accepting a guilty plea* when it failed to determine if the defendant was competent to enter the plea as required by article 26.13(b) in effect at the time. *See* Tex. Code Crim. Proc. Ann. art. 26.13(b) (West Supp. 2005) (unchanged). *Adams* held that the trial court had an extended opportunity to observe and converse with the defendant and entered "sane" on the docket sheet. This constituted a "substantial compliance" with article 26.13, even though

there was no express inquiry directed to the defendant as to his mental competency before the guilty plea was accepted.  745 S.W.2d at 538.  *Adams* dealt with the acceptance of a guilty plea under statutory requirements.

Perhaps, in view of appellant's citation of authorities, he intended to rely upon article 26.13(b) which provides:

> No plea of guilty or plea of nolo contendere shall be accepted by the trial court unless it appears that the defendant is mentally competent and the plea is free and voluntary.

Tex. Code Crim. Proc. Ann. art. 26.13(b) (West Supp. 2005).  Article 26.13 deals with the acceptance of a guilty plea, not with the *sua sponte* withdrawal of a guilty plea by the trial court.

If, in fact, appellant is challenging the trial court's acceptance of his guilty pleas, we examine the record.  Eight days after the jury's verdict finding "competency to stand trial," while represented by counsel, appellant entered the three guilty pleas.  The trial court engaged appellant in a dialogue to determine if the pleas were freely and voluntarily made, and concluded that they were.  The trial court admonished appellant of the consequences of his pleas and informed him of certain basic constitutional rights, including the right to trial by jury, which appellant waived.  Thus, the court had an opportunity to observe appellant and converse with him.  Appellant's responses were lucid and coherent.  On a plea form filed in each case, appellant stated that he had no present mental and emotional problems and that he "believed" that he was competent to stand trial.  Defense counsel stated on each form that appellant was competent to stand trial.  The trial judge had before him the legal presumption of competency and the recent jury verdict on competency.  On the said

plea forms, the trial court entered a finding that appellant was mentally competent. It cannot be said that the trial court did not comply with article 26.13(b). After the court accepted the guilty pleas, appellant made a judicial confession of the three offenses clearly answering the interrogations of his defense counsel and the prosecutor. It was at this point on November 28, 2003, that the trial court passed the guilty pleas proceedings to December 2, 2003, for a "punishment hearing."[5] We reject any claim appellant may have that the trial court failed to sufficiently inquire into his mental competency before accepting his guilty pleas as required by article 26.13(b).

At the subsequent proceedings which were an extension of the unitary trial, the State offered the testimony of the complaining witnesses, various police officers, and evidence of extraneous offenses. Appellant offered the testimony of his sister and her husband that appellant was mentally retarded. Appellant's counsel offered defense exhibit one, a packet of appellant's medical records from the time he was a child until the current time, asking the trial court to take the exhibit

---

[5] After the appellant's judicial confession to the three offenses, the evidentiary requirements of article 1.15 were satisfied without the necessity of further evidence. Tex. Crim. Proc. Ann. art. 1.15 (West 2005); *Dennery v. State*, 592 S.W.2d 343, 354 (Tex. Crim. App. 1979) (op. on reh'g) (judicial confession standing alone is sufficient to satisfy article 1.15 and sustain convictions).

The instant case should be considered as a unitary trial, not a bifurcated trial. Prior to the 1965 Code of Criminal Procedure all criminal trials were unitary trials regardless whether conducted before a jury or the court. *Barfield v. State*, 63 S.W.3d 446, 449 (Tex. Crim. App. 2001); *Duhart v. State*, 668 S.W.2d 384, 386 n.3 (Tex. Crim. App. 1984). Article 37.07, section 2(a) of the Code of Criminal Procedure authorizing bifurcation of trials is applicable *only* to pleas of not guilty before a jury. Tex. Code Crim. Proc. Ann. art. 37.07, § 2(a) (West Supp. 2005); *Barfield*, 63 S.W.3d at 449; *Duhart*, 668 S.W.2d at 386 n.3; *Morales v. State*, 416 S.W.2d 403, 405 (Tex. Crim. App. 1967). The bifurcation statute did not apply to the instant case where the trial was before the court on pleas of guilty. The bifurcation of pleas of guilty before the trial court without a jury has become common although unauthorized. *Barfield*, 63 S.W.3d at 450; *Ricondo v. State*, 634 S.W.2d 837, 842 (Tex. Crim. App. 1987) (plurality opinion). The unnecessary bifurcation is harmless error particularly where there is no objection as in the instant case. *See Barfield*, 63 S.W.3d at 450.

"into consideration in his punishment." Subsequently, appellant's counsel in closing arguments asked the trial court to consider leniency since appellant had entered guilty pleas and accepted responsibility for his acts. No other form of relief was requested.

A defendant has a right to withdraw his plea of guilty or nolo contendere in a bench trial without assigning a reason until the judgment has been pronounced or the case is taken under advisement. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979); *McWherter v. State*, 571 S.W.2d 312, 313 n.2 (Tex. Crim. App. 1978). This rule parallels the jury rule that the guilty plea may be withdrawn by the defendant until the case is submitted to the jury. *Wilson v. State*, 515 S.W.2d 274, 274-75 (Tex. Crim. App. 1974). And the trial court has the discretion to allow the withdrawal of the pleas of guilty or nolo contendere during the period in which the motion for new trial could be granted. *State v. Evans*, 843 S.W.2d 576, 577 (Tex. Crim. App. 1992). At no time did appellant seek to invoke his right to withdraw his pleas or ask the court to timely exercise its discretion. Instead, for the first time on appeal, appellant claims that the trial court should have *sua sponte* withdrawn the guilty pleas upon the introduction of the said Defense Exhibit 1.

"Prior to the 1965 Code of Criminal Procedure (effective January 1, 1966) the trial court was required to withdraw a defendant's plea of guilty or nolo contendere when the evidence fairly raises an issue of innocence whether the plea was before the jury or before the court in jury-waived proceedings." 43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 34.83 (2d ed 2001). Under the former code, a trial court could not conduct a trial on a plea of not guilty in a felony case. There had to be a jury trial. When the evidence fairly raised

an issue of innocence the trial court was obligated to withdraw the guilty plea and set the case before a jury on a plea of not guilty. *Id.*

After the effective date of the 1965 Code, *Moon v. State* eliminated the requirement of a *sua sponte* withdrawal of guilty plea in a bench trial where a jury had been waived. The *Moon* court explained:

> The 1965 Code of Criminal Procedure provides that a defendant may waive a jury trial and enter a plea of not guilty before the court in all except capital cases. Articles 1.13 and 1.14, V.A.C.C.P. There now seems to be no valid reason for the court to withdraw the guilty plea and enter a plea of not guilty for the defendant when the defendant enters a plea of guilty before the court after waiving a jury. It is the duty of the trial court to consider the evidence submitted and as the trier of the facts the court may find the appellant guilty of a lesser offense and assess the appropriate punishment or it may find the defendant not guilty. It would serve no purpose to withdraw the plea of guilty and enter a not guilty plea.

*Moon v. State*, 572 S.W.2d 681, 682 (Tex. Crim. App. 1978).

Appellant overlooks *Moon*. *See also Thomas v. State*, 599 S.W.2d 823, 824 (Tex. Crim. App. 1980). Under *Moon*, the trial court does not have to withdraw the guilty plea even if evidence fairly raises the issue of innocence. *See Sullivan v. State*, 573 S.W.2d 1, 1 (Tex. Crim. App. 1978); *Rivera v. State*, 123 S.W.3d 21, 33 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Even if it could be argued that, under the circumstances, appellant was entitled to a second competency hearing before a jury, there are barriers to such procedures. It is within the discretion of the trial court whether to *sua sponte* allow a second competency hearing before a jury. *Meraz v. State*, 714 S.W.2d 108, 115 (Tex. App.—El Paso 1986), *aff'd*, 785 S.W.2d 146 (Tex. Crim. App. 1990). It is not an abuse of discretion to deny a second hearing before a jury on the issue of

28

competency to stand trial in the absence of a showing of some change in competency since the first hearing. *Id*.

The El Paso Court of Appeals in its *Meraz* opinion stated:

> In the situation where a jury has already properly found the defendant to be competent, appellant must put forth some evidence of a subsequent change in competency or some "new evidence" in a manner analogous to the newly discovered basis for a new trial. Any other procedural or evidentiary framework would effectively block trial on the merits.

*Id*. at 115 (citing *Miller v. State*, 688 S.W.2d 219, 224 (Tex. App.—El Paso 1985, pet. ref'd)). *See also Bush v. State*, 353 S.W.2d 855, 858 (Tex. Crim. App. 1962); *Kizzee v. State*, 312 S.W.2d 661, 663 (Tex. Crim. App. 1958); *O'Neil v. State*, 642 S.W.2d 259, 262 (Tex. App.—Houston [14th Dist.] 1982, no pet.).

Where a defendant has been found competent to stand trial by a jury, the burden shifts to him to come forward with new evidence of a change in his mental competency. *See Clark v. State*, 47 S.W.3d 211, 219 (Tex. App.—Beaumont 2001, no pet.); *cf Thornhill v. State*, 910 S.W.2d 653, 654-55 (Tex. App.—Fort Worth 1995, pet. ref'd).

Appellant filed no written motion requesting a second competency hearing before a jury nor indicated to the court that he sought such a hearing. Appellant pointed to no evidence that showed a subsequent change in his competency to stand trial a mere fifteen days after the first competency hearing before a jury. For all the reasons discussed, point of error seven is overruled.

**Photographs**

In his eighth point of error, appellant contends that the trial court erred in admitting into evidence State's exhibits 13-20—photographs of the crime scene and the victim's injuries from a prior conviction, an enhancement allegation to which appellant had already pleaded "true."

The only objection addressed to the trial court was "I'm going to object to that. We have the judgment from that assault, and I am going to object to any evidence about the prior assault case." The enhancement allegations about the 1997 prior conviction were contained in the aggravated assault and robbery indictments. Appellant's plea of "true" did not prevent the State from offering evidence including the judgment of the prior conviction. *Davis v. State*, 68 S.W.3d 273, 282-83 (Tex. App.—Dallas 2002, pet. ref'd) (State is permitted to establish facts underlying the prior conviction used for enhancement purposes); *Haney v. State*, 951 S.W.2d 551, 555 (Tex. App.—Waco 1997, no pet.).

The admission of evidence in punishment is normally governed by article 37.07. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2005). *See Boone v. State*, 60 S.W.3d 231, 232 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Section 3(a)(1) of article 37.07 provides that regardless of the plea or whether punishment is to be assessed by the judge or jury, evidence may be offered by either party as to any matter that the court deems relevant to assessment of punishment. The statute gives the trial court broad discretion in determining the admissibility of evidence on punishment. *See Davis*, 68 S.W.3d at 282; *Hernandez v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

30

Appellant's only objection was general in nature and failed to specifically point out to the trial court why the offered photographs were legally inadmissible. *See* Tex. R. App. P. 33.1(a). On appeal appellant ignores his trial objection and complains that the introduction of the photographs were more prejudicial than probative, rendering the exhibits inadmissible. Appellant does not cite Rule 403 of the Texas Rules of Evidence, but that is the thrust of his appellate argument. Rule 403 must be specifically invoked in order to preserve error under that rule. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *see also Nelson v. State*, 864 S.W.2d 496, 499 (Tex. Crim. App. 1993). Appellant did invoke Rule 403 at trial. Where the complaint on appeal does not comport with the trial objection, nothing is presented for review. *Ibarra*, 11 S.W.3d at 197. The eighth point of error is overruled.

## Cumulative Error

In the ninth point of error, appellant urges that the "cumulative effect of the errors alleged denied appellant due process." He cites *Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988). We have found no error in any of appellant's contentions and hold that non-errors may not in their cumulative effect cause error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *see also Turner v. State*, 87 S.W.3d 111, 118 (Tex. Crim. App. 2002). The ninth point of error is overruled.

## Cruel and Unusual Punishment

"The trial court's sentence constitutes cruel and unusual punishment in violation of Texas law and the Eighth Amendment to the United States Constitution in light of *Atkins v. Virginia*

31

[536 US 304 (2002)] or alternatively, the evidence of mental illness adduced at punishment mitigated appellant's conduct and required a lower sentence." This is appellant's tenth point of error.[6]

Appellant did not object to the sentences on the basis of cruel and unusual punishment at trial, or at time of sentencing, or complain of the same in his motion for new trial. Claims of cruel and unusual punishment must be presented in a timely manner. *See Schneider v. State*, 645 S.W.2d 463, 466 (Tex. Crim. App. 1983); *Nicholas v. State*, 56 S.W.3d 760, 768 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). Because the complaint was not timely made, the claim has been waived. *See* Tex. R. App. P. 33.1(a)(1)(A); *Rhodes v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996).

If it had been preserved, appellant's claim lacks merit. Appellant cites the *Atkins* decision in which the Supreme Court held that the Eighth Amendment prohibits executions of mentally retarded defendants. *See also Ex parte Briseno*, 135 S.W.3d 1, 5 (Tex. Crim. App. 2004). The instant case is distinguished from *Atkins* because the death penalty was not assessed here. *Harris v. McAdory*, 334 F.3d 665 (7th Cir. 2003), in which a life sentence was imposed, recognized this distinction.

> Harris' reliance on *Atkins v. Virginia*, 536 U.S. 304, 153 L. Ed. 2d 335, 122 S. Ct. 2242 (2002) is misplaced. The court in *Atkins* held that the Eighth Amendment precludes capital punishment for mentally retarded defendants. The case *sub judice* is distinguishable because Harris is borderline mentally retarded, and more

---

[6] There were three sentences imposed by the trial after appellant's non-negotiable pleas of guilty, not one. It is doubtful that appellant intended to include in his contention the state jail sentence of one year for possession of cocaine. Appellant apparently has reference to the two fifty-five years sentences for aggravated assault and robbery enhanced by a prior conviction. All sentences were within the range of penalty set by the Legislature for the offenses involved and normally do not constitute excessive cruel or unusual punishment. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984).

importantly this is not a capital case. A cursory glance at *Atkins* reveals that the court was addressing the issue of mental retardation solely in the context of capital punishment.

*Harris*, 3347 3d at 668 n.1. *See also People v. Benford*, 812 NE2d 714, 726-27 (Tex. App. 2004) (regarding a 40 year sentence).

We reject appellant's assertion that it would not be an "erroneous extension of *Atkins*" to remand the instant case for a new hearing on punishment given the circumstances. In Texas, great discretion is accorded trial courts in assessing punishment within the legislative mandated range of penalties. *See Jackson*, 680 S.W. at 814. In a multifarious vein, the point of error asserts that in the alternative, the evidence of mental illness mitigated appellant's conduct and required "a lower sentence." Appellant has not cited authorities or presented argument as required by Rule 38.1(h) of the Texas Rules of Appellate Procedure. The failure to comply with the briefing rules presents nothing for review. *See Aldrich v. State*, 928 S.W.2d 558, 560 n.2 (Tex. Crim. App. 1996). Appellant requested the trial court to consider the evidence in question in assessing punishment. Appellant has not shown that the trial court failed to consider such evidence. The aggravated assault and robbery convictions are normally second degree felonies, Tex. Pen. Code Ann. §§ 22.02(b), 29.02(b) (West 2005), but the punishment for such offenses may be enhanced to a first degree felony by allegation and proof of a prior felony conviction, as occurred here. *See* Tex. Pen. Code Ann. § 12.42(b) (West 2005). The legal range of punishment for a first degree felony is life, or any term of years not more than 99 and not less than 5 years. Tex. Pen. Code Ann. § 12.32 (West 2005). The assessment of punishment in the two first degree felony cases here of aggravated assault and robbery

as enhanced was near the middle of the statutory range of punishment. We find no merit in appellant's contention. The tenth point of error is overruled.

The judgments of convictions are affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Puryear and Onion[*]

Affirmed

Filed: March 2, 2006

Publish

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1999).