In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00091-CR


______________________________




KELVIN FISHER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 06-0010X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Kelvin Fisher has appealed from his jury conviction on his plea of guilty to the offense of
aggravated assault with a deadly weapon. See Tex. Penal Code Ann. § 22.02 (Vernon Supp.
2007). The jury assessed Fisher's punishment at fourteen years' imprisonment. 

 On appeal, Fisher contends his sentence is disproportionate to the crime, citing Solem v.
Helm, 463 U.S. 277 (1983), and Davis v. State, 905 S.W.2d 655 (Tex. App.--Texarkana 1995, pet.
ref'd). 

 To preserve such a disproportionate sentencing complaint for appellate review, Fisher must
have presented to the trial court a timely request, objection, or motion that stated the specific grounds
for the desired ruling, or the complaint must be apparent from the context. See Tex. R. App. P.
33.1(a)(1); Harrison v. State, 187 S.W.3d 429, 433 (Tex. Crim. App. 2005); Williams v. State, 191
S.W.3d 242, 262 (Tex. App.--Austin 2006, no pet.) (claims of cruel and unusual punishment must
be presented in timely manner); Nicholas v. State, 56 S.W.3d 760, 768 (Tex. App.--Houston [14th
Dist.] 2001, pet. ref'd) (failure to complain to trial court that sentences were cruel and unusual
waived claim of error for appellate review). We have reviewed the record of the trial proceeding. 
No relevant request, objection, or motion was made. And, while this Court has held that a motion
for new trial is an appropriate way to preserve this type of claim for review, see Williamson v. State,
175 S.W.3d 522, 523-24 (Tex. App.--Texarkana 2005, no pet.); Delacruz v. State, 167 S.W.3d 904
(Tex. App.--Texarkana 2005, no pet.), Fisher did not file a motion for new trial. Fisher has not
preserved such an issue for appeal.

 Therefore, we affirm the trial court's judgment.


 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 29, 2007

Date Decided: November 7, 2007


Do Not Publish





EM>, 766 S.W.2d 377 (Tex.
App.--Texarkana 1989, no writ). During our analysis of the traditional motion, and in deciding
whether there is a disputed material fact issue which precludes summary judgment, we take evidence
favorable to Keathley as true and resolve all doubts in his favor. Limestone Prods. Distrib., Inc. v.
McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999); Nixon, 690 S.W.2d at 548. (2) 

II. Genuine Issues of Material Fact Existed at the Summary Judgment Stage

 J.J. Investment owned an antique business called Mama Jean's Antiques. The store was run
by Jack and Michael Jordan's mother. After her death, the Jordans decided to sell the store
inventory. They orally agreed to allow Keathley to sell inventory on eBay and receive a thirty-five-percent commission for his efforts. While J.J. Investment claimed it only allowed Keathley to sell
210 items on a trial basis, Keathley claimed the agreement was for him to sell the entire contents of
the store. When Keathley returned to Mama Jean's Antiques after selling the first trailer load,
J.J. Investment declined to allow him to sell additional inventory because he "ha[d] not furnished
an accounting nor payment . . . for any items that had been sold." Thereafter, Keathley provided a
list of sold items, which allegedly reflected a loss to J.J. Investment. 

 J.J. Investment filed suit against Keathley seeking a sum of money equivalent to the amount
of gross sales made by Keathley, less his commission, reasonable attorney's fees, and an order
instructing Keathley to return the unsold antiques and a borrowed trailer. Keathley filed an answer
denying these allegations and asserted breach of contract counterclaims against J.J. Investment and
Jordan Business. In his answer, Keathley claimed that the contract was for the sale of all store
inventory, not merely 210 items, that J.J. Investment and Jordan Business provided him with a listing
of all of the store inventory, and "proposed that the inventory be sold over a 1 to 1 ½ year period in
order to avoid depressing the prices to be received by flooding the market." In reliance of this
agreement, Keathley claimed he purchased a large amount of supplies and would lose a substantial
amount of income if he was not allowed to sell all of the inventory. He alleged that the Jordans
agreed to arrange a time and place for pickup of the next installment of inventory items, but never
did. Finally, Keathley alleged that the Jordans breached the oral agreement. 

 J.J. Investment and Jordan Business seized on the language in the answer that the inventory
was to be sold over a period exceeding one year. They filed what were labelled as traditional and
no-evidence summary judgment motions; but, instead of arguing they were entitled to judgment upon
their own claim, they only argued that the statute of frauds rendered Keathley's version of the oral
agreement unenforceable. (3) In support of their summary judgment motions, J.J. Investment and
Jordan Business attached a list of items with a total sales price of $64,210.25 and an affidavit of
attorney's fees. They also attached limited excerpts of Keathley's deposition testimony only
demonstrating that while he believed it would take anywhere from one to two years to sell all the
inventory, Jordan Business could "get rid of it all at once." J.J. Investment and Jordan Business
failed to attach any evidence regarding their version of the agreement or understanding between the
parties. Specifically, there was no evidence demonstrating Keathley and Jordan Business agreed
only one trailer load would be sold. 

 In response to the motions for summary judgment, Keathley again replied that there was a
genuine issue of material fact as to whether the agreement was for him to sell all of the inventory or
one trailer load. He also pointed out that there was no allegation of time period as to when the items
were to be marketed, and there was a genuine issue as to whether the contract could be performed
within one year. Keathley argued "[t]he fact that it may have been preferable to spread the sale over
more than one year to maximize profits does not mean that it could not have been completed within
one year." He further stated that even if the agreement was for sale of the entire inventory, and could
not be completed in a year, his partial performance in reliance on the oral agreement would not
render the contract unenforceable due to the statute of frauds. In support of his response, Keathley
attached additional and more complete excerpts of his own deposition testimony recounting that the
Jordans wanted to sell the whole store. The following excerpts support Keathley's version of events:

 Q. Okay. Was there ever a discussion about the -- taking a limited
number of items on a consignment for a trial basis?


 A. No. Because I made that real point blank clear up front after we had
gone through several false starts. . . . .

 

 . . . .


 Q. Okay. Was there a conversation with Lou Daniels about there was
only supposed to be so many items taken that day and did you ask Lou to call Dale
and ask to take more items to make a trailer load, to fill the trailer?


 A. I know that I took several hundred items out that day. I started loading
things up. Lou said something to me about a few pieces, and I said, that's not the deal
I have with Dale. I'm selling the shop. I'm not driving up here for a couple of items
at a time or we'll be doing this for the next forty years.


 . . . .


 A. . . . I mean, it was obvious at that point he had made up his mind that
I was going to sell everything in the store. 

 

 . . . .


 Q. . . . How many total items did you think that you were going to sell,
or how many total items was in the building? You took 225. How many were left,
do you think? 


 A. Oh, thousands. 


 . . . .


 Q. Okay. Your plan was to come up and take a trailer load at a time?


 A. Right. 


 Q. Go put them on eBay and sell them --


 A. Right. 


 Q. -- come back and get another trailer load, take them and put them on
eBay and sell it --


 A. Correct.


 In addition, Keathley attached an affidavit stating the contract was for him to sell the entire
contents of the store, and in reliance thereof, he completed all of his other sales activities and agreed
to devote all of his time and effort to the liquidation of Mama Jean's inventory. Keathley stopped
attending auctions to purchase his own inventory and cancelled "buying trips." He contacted a
Houston auctioneer to make arrangements for auction of the inventory and made plans for a "satellite
broadcast worldwide eBay auction" which could have sold the entire store contents in one or two
weekends. Auction assistant Michael Whelchel also executed an affidavit stating Keathley contacted
him about the internet auction which would only be scheduled for two days. 

 The key question to be decided was whether this oral contract was a sale of one load of goods
or for the sale of the entire inventory of the business. Before there may be any application of the
defense provided by the statute of frauds, the terms of the contract must be established. Instead of
addressing the central issue of what the terms of the agreement were, the trial court agreed with
J.J. Investment's and Jordan Business' argument that the statute of frauds barred Keathley's breach
of contract claim. Apparently, basing its decision only on the statute of frauds issue, the trial court
granted summary judgment in favor of J.J. Investment, rendered a take-nothing judgment against
Keathley on the counterclaims, and ordered Keathley to pay $41,763.00. In this, the trial court erred. 

 First, there was no evidence to grant J.J. Investment a traditional motion for summary
judgment. Absent from the record is any evidence that the contract was for the sale of only one
trailer load. The evidence, at most, presented genuine issues of material facts. When we take
evidence favorable to Keathley as true and resolve all doubts in his favor, we find that
J.J. Investment failed to prove the terms of the contract, the specified time for performance, that
Keathley breached the contract, or what the damages resulting from any breach were, such that it was
entitled to judgment as a matter of law. J.J. Investment simply did not meet its initial burden on its
traditional motion for summary judgment. 

 Keathley presented evidence, which remained uncontroverted, that the contract was for the
sale of the entire store inventory, that he acted in reliance of that agreement, and that J.J. Investment
and Jordan Business breached that agreement by disallowing him the right to sell the entire inventory
of the store. He further stated that he had sold $40,000.00 worth of merchandise, that the original
purchase price of the entire store inventory was $947,292.00, and that he was to receive a thirty-five-
percent commission.

 Thus, the granting of J.J. Investment's traditional motion for summary judgment and
awarding damages was erroneous. Further, without a finding supported by summary judgment
evidence that the contract was for sale of one trailer load, it was premature to consider the
application of the statute of frauds issue, especially since it was merely Jordan Business' defense to
Keathley's breach of contract claim. (4) Consequently, the judgment granted to Jordan Business
denying all of Keathley's claims was erroneous. 

III. Conclusion 

 We reverse the summary judgments in favor of J.J. Investment and Jordan Business and
remand the cause to the trial court for further proceedings. 




 Jack Carter

 Justice


Date Submitted: June 25, 2009

Date Decided: July 9, 2009


1. J.J. Investment brought suit against Keathley, who answered and filed counterclaims against
J.J. Investment and Jordan Business. Initially, only J.J. Investment filed a traditional motion for
summary judgment. The trial court entered an order in which it found the "Plaintiff's motion is
GRANTED," without specifying the amount of damages. Later, both J.J. Investment and Jordan
Business filed motions for summary judgment against Keathley. The trial court granted
J.J. Investment damages and attorney's fees and granted Jordan Business a judgment denying
Keathley's remaining counterclaims.
2. Even though J.J. Investment and Jordan Business filed pleadings purportedly containing
motions for no-evidence summary judgments, they do not set out the essential elements of the causes
of action pled and consequently do not state the elements for which Keathley has presented no
evidence. See Tex. R. Civ. P. 166a (i). Therefore, we construe the motions as traditional motions
for summary judgment. 
3. The statute of frauds provides that an agreement which is not to be performed within one
year is not enforceable unless it is in writing and signed by the person to be charged. Tex. Bus. &
Com. Code Ann. § 26.01 (Vernon 2009). 
4. The terms of the contract were not established; material facts remained to be decided. It is
irrelevant if the statute of frauds rendered Keathley's version of the contract unenforceable until the
terms of the contract are established.