**Jeffrey Clay LASITER, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 09–07–00359–CR.**

Court of Appeals of Texas,
Beaumont.

Submitted Nov. 6, 2008.

Decided April 15, 2009.

Kaye Ellis Stone, The Woodlands, for appellant.

Michael McDougal, District Atty., R. Michael Shirley, Asst. District Atty., Gail Kikawa McConnell, Conroe, for State.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

A jury found Jeffrey Clay Lasiter mentally competent to stand trial, and Lasiter subsequently pled guilty to first degree murder. *See* TEX. PEN.CODE ANN. § 19.02 (Vernon 2003). The trial court assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Lasiter challenges the jury's finding that determined him competent to stand trial, and he asserts that several errors occurred during his competency trial. Lasiter also contends that the trial court erred in denying his post-trial motions. We affirm.

## Background

Lasiter followed Kasey Davis's vehicle from a parking lot to an apartment complex and then shot Davis at close range with a deer rifle. The two had never previously met. After shooting Davis, Lasiter walked to his truck and drove away from the scene. Soon thereafter, a Conroe police officer stopped Lasiter's truck be-

cause it matched the description of the truck involved in the parking-lot shooting. After exiting his truck, Lasiter admitted to the officer that he shot a man and explained that he believed Davis was a member of the "CIA and the FBI" that had harmed Lasiter's family. Lasiter also stated that he was a servant of God, apologized to God, and requested the officer take him to jail.

While jailed, Lasiter drank an extraordinary amount of water and sustained a significant brain injury. The injury caused Lasiter to lose consciousness and to be placed on life support for a short time. Because of the brain injury, Lasiter's permanent injuries included a speech impairment.

After Lasiter's condition improved, the State requested a competency examination. The trial court ordered that Lasiter submit to an examination by Dr. Steven Rosenblatt, who subsequently examined Lasiter twice. Following the second examination, Dr. Rosenblatt composed his March 7, 2007, written report, expressing his opinion that Lasiter was not currently competent to stand trial. Dr. Rosenblatt's written report notes that after his first examination, he had concluded that Lasiter was competent for trial.

In March 2007, the trial court conducted a jury trial on the competency issue. Following a two-day trial, a jury found Lasiter mentally competent to stand trial. Dr. Victor Scarano, Lasiter's expert, and Dr. Rosenblatt testified during the competency trial. Although each physician's opinion had a different basis, both physicians testified that Lasiter was not competent to stand trial.

The jury also heard testimony from several witnesses with whom Lasiter had interacted while in jail awaiting trial. In general, these witnesses described how they could communicate with Lasiter. They explained that Lasiter appeared to comprehend the situations in which each of them dealt with him.

The jury found Lasiter competent to stand trial. Following the jury's verdict, the trial court denied all relief requested by Lasiter in several post-trial motions. On May 7, 2007, Lasiter pled guilty to the offense of murder and then waived his right to have a jury assess his punishment.

A videotape depicting the stop and arrest and several letters written by Lasiter to his parents were admitted into evidence during the punishment phase of Lasiter's trial. At the conclusion of the trial, the trial court imposed a life sentence. Lasiter subsequently filed a motion for new trial, which was overruled by operation of law. Lasiter raises five issues in his appeal.

## Complaints Regarding Admission of Evidence of the Alleged Offense

In issue one, Lasiter argues that during the competency trial, the State's attorney revealed facts of the crime with which Lasiter was charged. Lasiter also asserts that the State suggested to the jury that he would receive a less severe punishment if the jury found him incompetent to stand trial.

### Standard of Review

Generally, a competency hearing is a separate and independent hearing from the trial on the crime charged in the indictment. TEX.CODE CRIM. PROC. ANN. art. 46B.005 (Vernon 2006); *Barber v. State*, 757 S.W.2d 359, 361 (Tex.Crim.App.1988).

"The purpose of a separate hearing is to allow a determination uncluttered by evidence of the offense itself." *Basham v. State*, 608 S.W.2d 677, 679 (Tex.Crim.App. 1980). The guilt of the defendant is not an issue in the competency hearing, and, generally, introducing evidence of the alleged offense is improper. *See Goodman v. State*, 701 S.W.2d 850, 862–63 (Tex.Crim. App.1985), *overruled on other grounds by Hernandez v. State*, 757 S.W.2d 744, 751–52 n. 15 (Tex.Crim.App.1988); *Callaway v. State*, 594 S.W.2d 440, 443 (Tex.Crim.App. 1980); *McBride v. State*, 655 S.W.2d 280, 284 (Tex.App.-Houston [14th Dist.] 1983, no pet.).

■ However, not every mention of the crime itself is prejudicial; to be prejudicial, "[t]he evidence of the offense presented to the competency jury must be of such a nature as to deny the accused a fair and impartial determination of his competency." *Brandon v. State*, 599 S.W.2d 567, 580 (Tex.Crim.App.1979), *vacated on other grounds*, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981).

### Application of Law to Facts

■ First, we address whether Lasiter preserved the complaints he makes in his first issue for our review. In his brief, Lasiter complains about the State's attorney's comment during the cross-examination of Dr. Rosenblatt that Lasiter was potentially "lying about his lack of recall of the shooting incident to boost his 'competency defense[.]'" Lasiter also complains about the State's attorney's suggestion in closing argument that incompetency was Lasiter's "only defense" and of the State's argument that the jury should find Lasiter competent and make him stand trial for murder.

Before the competency trial, the trial court conducted a hearing on Lasiter's motion in limine in which Lasiter requested that no evidence of Lasiter's offense be admitted into evidence. The State responded that it intended to cross-examine the experts about the offense to show Lasiter's motive for feigning incompetency. The trial court stated that it would address any objections to the State's cross-examination about the offense during trial.

During trial, Lasiter did not lodge an objection when the State's attorney questioned Dr. Rosenblatt about why Lasiter might claim to be incompetent. Lasiter also failed to object to the State's attorney's comments regarding Lasiter's effort to use incompetency as a defense during the State's closing argument.

■ Generally, a defendant must object at trial to preserve error for review. *Basham*, 608 S.W.2d at 679. "[T]he denial of a motion in limine is simply not sufficient. There must be a proper objection to the proffered evidence." *Id.* By not objecting at trial, Lasiter failed to preserve these complaints for our review. *See* TEX.R.APP. P. 33.1(a); *Basham*, 608 S.W.2d at 679.

■ Lasiter also did not object when the State's attorney asked Dr. Scarano about the crime with which Lasiter had been charged; in response to the question, Dr. Scarano answered: "Charged with murder." Later, Lasiter did object when, in reply to the State's attorney's inquiry regarding the facts of the case, Dr. Scarano agreed they were "[e]xtremely serious."

■ We hold that by not objecting to the question about the crime with which he had been charged, Lasiter failed to preserve his complaint as to the question or to Dr. Scarano's response for our review. With respect to Dr. Scarano's statement that the facts of the case were

"[e]xtremely serious," Lasiter's brief acknowledges that the "mere mention that the offense was a 'serious offense' would not necessitate reversal[.]" We further note that appellate courts have stated that during a competency trial, the mention that the offense was capital murder, does not necessarily deprive a defendant of a fair determination of his competency. *See Goodman,* 701 S.W.2d at 863; *see also Barber,* 757 S.W.2d at 362. We hold that Dr. Scarano's express acknowledgment that the facts were extremely serious did not deprive Lasiter of a fair determination of whether he was competent to stand trial.

Lasiter also did not preserve error with respect to several questions inferring that being in a state hospital would be better than going to prison. Because no error was preserved on these questions, we likewise overrule Lasiter's complaints about them. *See* TEX.R.APP. P. 33.1(a); *Basham,* 608 S.W.2d at 679.

■ Finally, Lasiter complains about several comments made by the State's attorney during a bench conference. During the bench conference, the State asserted that Lasiter was "malingering," and that the evidence would show that Lasiter killed "an unarmed innocent—[.]" Lasiter claims the jury heard these statements, but the record does not reflect that Lasiter's attorney requested either a mistrial or an instruction from the judge for the jury to disregard these comments. Absent a request to the trial court to cure the alleged error, no error was preserved for our review. *See Young v. State,* 137 S.W.3d 65, 70 (Tex.Crim.App.2004). Having reviewed the arguments Lasiter makes in issue one, and finding them either not preserved or without merit, we overrule Lasiter's first issue.

## Challenge to Jury's Competency Finding

In issue two, Lasiter asserts that the jury's finding him competent to stand trial is against the great weight and preponderance of the evidence. Lasiter argues he was incompetent to stand trial because both medical experts who testified agreed that he did not possess sufficient present ability to consult with his attorney with a reasonable degree of rational understanding.

### Standard of Review

■ Texas law presumes a defendant competent and a defendant bears the burden of proving he was incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (Vernon 2006). A person is incompetent to stand trial if he does not have:

(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or

(2) a rational as well as factual understanding of the proceedings against the person.

*Id.* at 46B.003(a) (Vernon 2006). When a defendant challenges a jury finding on which he bears the burden of proof, "the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust." *Meraz v. State,* 785 S.W.2d 146, 155 (Tex. Crim.App.1990); *Morris v. State,* 214 S.W.3d 159, 165 (Tex.App.-Beaumont 2007, pet. granted). We are mindful that in reviewing a fact finder's resolution of an issue, "[t]he jury is the judge of the credibility of the witnesses at the competency

hearing and the weight to give to the testimony. The jury [may] accept or reject all or any of a witness's testimony. It is the exclusive province of the jury to resolve conflicts." *Williams v. State,* 191 S.W.3d 242, 248 (Tex.App.-Austin 2006, no pet.); *see also Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000).

### The Competency Trial

During the competency trial, seven witnesses testified: Lasiter called two and the State called five. Both witnesses called by Lasiter were physicians. Dr. Rosenblatt, a board-certified psychiatrist appointed by the trial court, testified that he met with Lasiter twice, once on July 30, 2006, and again on March 5, 2007. Dr. Rosenblatt testified that, currently, his opinion was that Lasiter was not competent to stand trial. · Nonetheless, Dr. Rosenblatt acknowledged that following his first examination of Lasiter, he felt that Lasiter was competent.

Dr. Rosenblatt explained the similarities and differences between his two examinations to explain why he changed his opinion concerning Lasiter's competence. The similarities are described as follows. During both examinations, Dr. Rosenblatt stated that Lasiter "had a reasonable understanding of the legal system, including the nature of what goes on in a courtroom, who the jury are, what the judge does, the prosecutor, defense attorney, things of that nature." Also, during both examinations, Dr. Rosenblatt felt that Lasiter was cooperative, listened carefully, exhibited little emotion, and while difficult to understand, he· was understandable. On both occasions when Dr.. Rosenblatt examined him, Lasiter told Dr. Rosenblatt that he could not recall the specifics of the incident that led to his arrest, but that he was aware of the charge against him.

With respect to the differences between the two examinations, Lasiter told Dr. Rosenblatt that he could assist in his defense during the first examination. Yet in the second exam, Lasiter said he did not know whether he could assist in his defense. In addition, Dr. Rosenblatt stated that during his second exam, he and Lasiter discussed a handwritten letter found on Lasiter, but not in Lasiter's writing. According to Dr. Rosenblatt, the letter, which was not introduced into evidence, expressed "hyper religious content and rambling content which had a paranoid flavor to it. . . ." Dr. Rosenblatt stated that although he struggled with the question of Lasiter's competence, the content of the letter "kind of tipped my opinion in the direction of [Lasiter's] not being competent to stand trial. . . ." Dr. Rosenblatt indicated that his opinion that Lasiter was incompetent was based on his impression that Lasiter was suffering from a psychotic thought process. Dr. Rosenblatt acknowledged that he did not base his opinion on Lasiter's speech impairment or upon Lasiter's failure to exhibit more emotion during the two examinations.

Dr. Scarano, a board-certified psychiatrist and licensed attorney, was the only other expert who testified during the competency hearing. Dr. Scarano met with Lasiter for approximately four hours on October 12, 2006. He reviewed many of Lasiter's medical records, police records, and spoke to Lasiter's parents and former spouse. During the competency trial, Dr. Scarano testified that Lasiter was not competent to stand trial because of the significant brain damage he suffered after his February 2006 arrest. Dr. Scarano explained that Lasiter drank an extraordinary amount of water that resulted in extreme swelling of his brain and caused the brain injury. Dr. Scarano relied on CT scans and electrolyte studies performed

during Lasiter's hospitalization that objectively showed a brain injury. According to Dr. Scarano, Lasiter had a factual understanding of the proceedings against him but did not have a rational understanding of the proceedings, and Lasiter could not assist in his defense. In Dr. Scarano's opinion, because of Lasiter's brain injury, he could not "track what's going on in the courtroom because he can't process information fast enough." Dr. Scarano further explained:

> [T]he brain damage that Mr. Lasiter has suffered doesn't allow him to really grasp the magnitude of his brain injury. So he doesn't understand how much damage occurred to him at the time he was taken to Conroe hospital with this brain swelling. Therefore, if he lacks insight, he can make judgments that would not be in his best interest.

Lasiter, in Dr. Scarano's opinion, "doesn't have the brain capacity now to be able to engage in a reasoned choice of legal strategies and options." Consequently, "his attorney would wind up being a guardian of sorts, trying to decide what would be best for Mr. Lasiter rather than having Mr. Lasiter participate."

Dr. Scarano also described the results of an intelligence test that he administered. Lasiter scored in the lower average range, but based on Lasiter's educational background, Dr. Scarano expected Lasiter, a college graduate, to score higher. With respect to Lasiter's recovery from the brain injury, Dr. Scarano testified that Lasiter probably improved in the first six to eight months after the injury, but Dr. Scarano expected no further improvement.

Dr. Scarano was also asked about Dr. Rosenblatt's testimony. In response, Dr. Scarano testified that he "absolutely disagree[d]" with Dr. Rosenblatt. According to Dr. Scarano, Lasiter was not psychotic at the time he evaluated Lasiter. Although Lasiter could respond to questions, in Dr. Scarano's opinion, Lasiter's brain damage rendered him incompetent to testify and unable to assist his attorney. Thus, Dr. Scarano concluded that Lasiter was not competent to stand trial.

In presenting evidence to show that Lasiter was competent, the State presented testimony from several persons who had interacted with Lasiter while he was in jail. Rosalyn Donaldson, an officer with the Montgomery County Sheriff's Office, handles disciplinary issues that occur in the jail. In October 2006, Lasiter received a "disciplinary writeup" for "a major infraction of hoarding medication." Donaldson testified that instead of undergoing a hearing on his violation, Lasiter pled guilty to the infraction and accepted probation. In Donaldson's presence, Lasiter executed a document to indicate his decision on how he wanted to proceed on the charge. Donaldson explained that Lasiter even apologized to her for his messy writing because he was shaking. In Donaldson's opinion, Lasiter comprehended the disciplinary proceeding. Donaldson also testified that she understood Lasiter "perfectly when he spoke" to her and "he made eye contact as well."

Glen Clandar, the jail's food service director, explained how inmates place orders for snack items from the commissary. To do so, the inmate must complete a "Scantron" sheet, which includes the inmate's name, "PIN" number, and the item number and quantity for each item ordered. The items are selected from an order guide containing items available for inmates to order. Clandar testified that Lasiter routinely orders items with no known

problems. Clandar also stated that he and the other employees do not assist inmates with their orders. However, Clandar did not know if other inmates had helped Lasiter when he placed his commissary orders.

A night supervisor for the jail testified that Lasiter was housed with the jail's general population and that he kept a "very organized" cell compared with other inmates. Next, one of the jail's medics explained that he frequently administered medication to Lasiter. The medic testified that Lasiter could communicate his needs and had caused no problems. The medic agreed that Lasiter's ability to communicate had neither improved nor declined in the past six months. The last witness, a detention officer, stated that she had direct contact with Lasiter when she placed handcuffs on him to bring him to the courthouse. She testified that when asked whether the handcuffs were too tight, Lasiter responded that they were fine. She further testified that Lasiter was quiet and stayed to himself and that she had no problems communicating with him.

The trial court provided the jury with instructions on the burden of proof applicable to a competency trial and the legal meaning of "incompetency." The jury subsequently rejected Lasiter's claim of incompetency.

### Application of Law to Facts

■ Lasiter contends that the evidence is insufficient to support the jury's competency finding because the "greater weight of the evidence consisted of the opinions of [the] two experts" who testified he was incompetent to stand trial.

We note that while both experts opined that Lasiter was not competent, the reasons for their conclusions differed significantly. Dr. Rosenblatt's opinion was based on his belief that Lasiter had present symptoms of a psychotic thought process; he rejected the claim that Lasiter's brain injury rendered Lasiter incompetent. In the absence of the presence of psychotic thoughts, Dr. Rosenblatt had previously reached the opinion that Lasiter was competent. Dr. Scarano, on the other hand, testified that Lasiter was "not psychotic" during his meeting with him and attributed Lasiter's incompetency to his brain injury.

In reaching its verdict, the jury may have relied partly upon the tests that Dr. Scarano administered to Lasiter that showed that Lasiter scored (1) average on a test for intelligence, (2) average in a test of common modes of behavior in society, (3) twenty-three out of thirty points on a mini-mental exam, and (4) normal in a similarities test. While Lasiter did not answer the number of questions correctly on a math exam that would be expected of a college graduate with a business degree, he scored average for his age group. Dr. Scarano additionally acknowledged that Lasiter's responses were rational. Dr. Scarano also agreed that a lack of memory about the events surrounding an offense would not render a person incompetent.

In summary, the jury in this case was faced with conflicting evidence. Dr. Scarano opined that Lasiter's brain injury rendered him incompetent while Dr. Rosenblatt disagreed that the brain injury affected Lasiter's competency. Dr. Rosenblatt based his opinion that Lasiter was incompetent on Lasiter's letter because he believed it revealed that Lasiter was suffering from psychotic thoughts; Dr. Scarano disagreed and, based on his examination, did not believe that Lasiter suffered from a psychotic thought pro-

cess. On this record, the jury may have believed that Lasiter was not currently suffering from psychotic thought, agreeing in part with Dr. Scarano, and that Lasiter's brain injury did not render him incompetent, agreeing in part with Dr. Rosenblatt.

Here, the jury determined the issue involving whether Lasiter was competent to stand trial. In general, juries are free to believe or disbelieve all or part of a witness's testimony. The Court of Criminal Appeals has repeatedly held: "The jury may believe some witnesses and refuse to believe others and it may accept portions of the testimony of a witness and reject other portions." *Esquivel v. State,* 506 S.W.2d 613, 615 (Tex.Crim.App.1974); *see also Wesbrook,* 29 S.W.3d at 111; *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986). The discretion afforded a jury's determination of credibility of witness testimony extends to competency trials. *Williams,* 191 S.W.3d at 248; *Clark v. State,* 47 S.W.3d 211, 215 (Tex.App.-Beaumont 2001, no pet.).

Moreover, a jury resolves conflicts in evidence by weighing testimony and then rejecting any or all of a witness's testimony. *See Williams,* 191 S.W.3d at 248; *see also Wesbrook,* 29 S.W.3d at 111. In this case, the jury resolved the conflicts in the experts' respective opinions and chose to believe that Lasiter was not psychotic and that his brain injury did not render him unable to assist in his defense. The record also contains other evidence, such as Lasiter's performance on intelligence tests, which the jury may have used to reject Lasiter's claim that he was not

competent. We conclude that the jury's rejection of Lasiter's claim of incompetency was not so against the great weight and preponderance of the evidence as to make the jury's finding manifestly unjust. *See Meraz,* 785 S.W.2d at 155. We overrule Lasiter's second issue.

### Lasiter's Post–Competency–Hearing Motion

In issue three, Lasiter complains that the trial court erred in denying his motion for judgment notwithstanding the verdict filed after the jury found him competent to stand trial. He also complains about the trial court's failure to hold an evidentiary hearing on his motion for new trial following his competency hearing. Although found competent by the jury, Lasiter argues that the evidence that he was not competent to stand trial was compelling. Additionally, he argues that a hearing was required because his attorney's affidavit raised a new claim that Lasiter was "presently operating under psychotic thoughts...."

Generally, a trial court's duty to decide a defendant's competency encompasses resolving issues that arise before trial and those that are "raised after the trial on the merits begins[.]" TEX.CODE CRIM. PROC. ANN. arts. 46B.004(a), (b), 46B.005(d) (Vernon 2006); *see McDaniel v. State,* 98 S.W.3d 704, 710 (Tex.Crim.App.2003) (discussing prior version of the competency statute).[1] Whenever the evidence is brought to the judge's attention, a nonjury "informal inquiry" is "required only if the evidence brought to the judge's attention raises a bona fide doubt in the judge's mind about the defendant's competency to

1. Article 46.02 of the Texas Code of Criminal Procedure was repealed, and the Code of Criminal Procedure was amended by adding

"Chapter 46B. Incompetency to Stand Trial." *See* Act of April 30, 2003, 78th Leg., R.S., ch. 35, §§ 1, 15, 2003 Tex. Gen. Laws 57, 58, 72.

stand trial." *McDaniel,* 98 S.W.3d at 710;[2] *see also* Tex.Code Crim. Proc. Ann. art. 46B.004(c) (Vernon 2006).

Here, Lasiter reasserted the issue of his competency following the conclusion of his first competency hearing. When Lasiter reasserted a claim of incompetency, the issue nevertheless remained the same: whether the evidence that accompanied Lasiter's request for a second competency hearing raised a bona fide doubt about Lasiter's continued competency to stand trial that would require the trial court to conduct an informal inquiry to determine the need for another jury competency determination. Tex.Code Crim. Proc. Ann. art 46B.004(c); *see also McDaniel,* 98 S.W.3d at 710.

 Evidence sufficient to support a finding that a defendant may be incompetent may come from several sources, including the trial court's own observations, known facts, evidence presented, motions, affidavits, or any other claim or credible sources. *Clark,* 47 S.W.3d at 217. "A bona fide doubt is 'a real doubt in the judge's mind as to the defendant's competency' "[;] evidence sufficient to create a bone fide doubt is that which shows a " 'recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant.' " *Fuller v. State,* 253 S.W.3d 220, 228 (Tex.Crim.App.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 904, 173 L.Ed.2d 120 (citations omitted). If a bona fide doubt exists, the trial court must conduct an informal inquiry to determine whether some evidence supports a finding of incompetency and a need to commence a competency hearing before a jury. *Fuller,* 253 S.W.3d at 228; *McDaniel,* 98 S.W.3d at 710; *see also* Tex.Code Crim. Proc. Ann. art. 46B.004(c); Tex.Code Crim. Proc. Ann. art. 46B.005(a), (b) (Vernon 2006).

 Appellate courts review a trial court's decision not to conduct a competency inquiry for an abuse of discretion. *Greene v. State,* 225 S.W.3d 324, 328 (Tex. App.-San Antonio 2007, no pet.); *Lawrence v. State,* 169 S.W.3d 319, 322 (Tex. App.-Fort Worth 2005, pet. ref'd); *Brown v. State,* 129 S.W.3d 762, 765 (Tex. App.-Houston [1st Dist.] 2004, no pet.); *see also Moore v. State,* 999 S.W.2d 385, 393 (Tex. Crim.App.1999). In reviewing the record to determine whether sufficient evidence raised a bona fide doubt about Lasiter's competency to stand trial, and considering the evidence that accompanied Lasiter's post-competency hearing motion, we are mindful that we should " 'afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.' " *McDaniel,* 98 S.W.3d at 713 n. 28 (quoting *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)). Therefore, we review the record to determine whether the trial court abused its discretion in denying Lasiter's post-competency-hearing motion.

### *Lasiter's Post–Competency– Hearing Motion*

In his motion, Lasiter argued that the jury reached the wrong result in finding

---

**2.** The change in the law did not result in an alteration of the process discussed in *McDaniel v. State,* 98 S.W.3d 704, 710 (Tex.Crim. App.2003), regarding the need for a bona fide doubt to arise in the trial court's mind before it is required to conduct an informal or "competency" inquiry. *Compare* Act of May 29, 1975, 64th Leg., R.S., ch. 415, § 1, 1975 Tex. Gen. Laws 1095, 1095–1096, *with* Tex.Code Crim. Proc Ann. art. 46B.004(c) (Vernon 2006).

him competent because both experts, Dr. Rosenblatt and Dr. Scarano, agreed that he was incompetent to stand trial. Dr. Rosenblatt's and Dr. Scarano's written reports, dated before the competency hearing, along with copies of their curricula vitae, are attached to the post-competency-hearing motion. The motion also contains an affidavit from Lasiter's trial counsel concerning Lasiter. The attorney's affidavit discusses a post-competency-hearing meeting that occurred on March 25, 2007; Lasiter's attorney concluded:

> After reading his statement, I believe Lasiter is also suffering from psychosis in addition to brain damage. I do not personally and/or professionally think Lasiter can consult with me with a reasonable degree of rational understanding. I cannot understand him and his writings show that he is delusional. His delusional state of mind leads me to believe he does not understand me to a reasonable degree of rational understanding.

The "statement" to which the attorney referred consisted of Lasiter's handwritten note incorporated into the affidavit that stated:

> Jesus Christ is acusing me of worshiping Satan
>
> I must have a lie detitor test to prove that
>
> I was not doing You will save my soul by doing this for me
>
> Will you do that for me[?]

### Application of Law to Facts

■ At the point that Lasiter filed his post-competency-hearing motion, the trial court was already aware of Lasiter's attorney's allegation that Lasiter presently suffered from psychotic thoughts. Both Dr. Rosenblatt and Dr. Scarano had recently testified and expressed differing opinions about Lasiter's claim that he suffered from psychotic thoughts. While their reports were not offered or admitted into evidence at the competency hearing, both experts were thoroughly examined about their respective opinions during the hearing. Based on the evidence addressing Lasiter's claim that he suffered from psychotic thoughts, the judge, like the jury, was entitled to conclude that Lasiter was not presently suffering from psychotic thoughts. In summary, the reports add nothing new to the testimony that had addressed Lasiter's competency during the competency hearing. Under these circumstances, the trial court could reasonably conclude that the written reports did not raise a bona fide doubt about Lasiter's competency.

■ When placed in the context of evidence previously admitted during the competency hearing, the affidavit of Lasiter's trial attorney also fails to raise a bona fide doubt about Lasiter's competency. For example, the affidavit states that Lasiter remained the same as he was when he underwent his competency hearing. Trial counsel's opinion that Lasiter was suffering from psychosis and brain damage was based on Lasiter's written statement that he felt he had been wrongfully accused of worshiping Satan. While this statement occurred after Lasiter's competency hearing, it does not differ significantly from the statements made by Lasiter that were in evidence during the competency hearing. Rosenblatt testified that a letter found on Lasiter's person during an evaluation had "a lot of hyper religious content and rambling content which had a paranoid flavor to it." In Dr. Rosenblatt's

opinion, these statements represented Lasiter's "underlying psychotic thought content." Dr. Rosenblatt specifically stated that he formulated his opinion regarding Lasiter's competency based on the letter.

We conclude that Lasiter's written note to his attorney, tending to show that he believed himself to be an object of persecution, provided nothing more than cumulative evidence similar to other statements discussed during Lasiter's competency hearing. The jury had previously rejected this type of evidence as either not credible or insufficient to make Lasiter incompetent. The trial court was free to reach the same conclusions about Lasiter's claim that he was suffering from psychotic thoughts.

We conclude that the trial court could reasonably determine that Lasiter's post-competency-hearing motion did not create a bona fide doubt as to his competency. *See Fuller*, 253 S.W.3d at 228; *Clark*, 47 S.W.3d at 218. Therefore, we find that the trial court did not abuse its discretion in denying Lasiter's post-competency-hearing motion. *See Greene*, 225 S.W.3d at 328; *Lawrence*, 169 S.W.3d at 322; *Brown*, 129 S.W.3d at 765; *see also Moore*, 999 S.W.2d at 393. We overrule Lasiter's third issue.

### Plea and Punishment Proceedings

■ Lasiter argues in issue four that the trial court should have conducted "a second competence hearing before proceeding with [Lasiter's] plea and punishment. . . ." Except for his request for another competency hearing in his post-competency-hearing motion, the record does not reflect that Lasiter's attorney requested an additional competency hearing during the plea or punishment proceedings. Nevertheless, where evidence raises a bona fide doubt as to a defendant's competency, a trial court, *sua sponte*, has a duty to conduct an informal inquiry or an informal competency hearing to determine whether to commence a formal competency hearing in the presence of a jury. *See Fuller*, 253 S.W.3d at 228; *McDaniel*, 98 S.W.3d at 710; *see also* TEX.CODE CRIM. PROC. ANN. art. 46B.004(c); TEX.CODE CRIM. PROC. ANN. art. 46B.005(a), (b). Therefore, we review Lasiter's additional arguments to determine whether, at this stage, the trial court erred in failing to *sua sponte* conduct a second competency hearing.

■ Lasiter's plea and punishment hearings, beginning on May 7, 2007, were conducted by a different judge than the one who conducted Lasiter's competency hearing. Before accepting Lasiter's guilty plea, Lasiter, with the assistance of his counsel at various times, answered the trial court's questions directed at determining whether his plea was knowing and voluntary. The trial court questioned Lasiter and his counsel about Lasiter's prior mental health diagnoses. At that point, Lasiter's counsel expressed his opinion that Lasiter's "mental issues" interfered with Lasiter's ability to consult with counsel. However, Lasiter's counsel also stated that "Mr. Lasiter has articulated to me that he wants to plead guilty and that he wants to go forward with the proceeding because the jury has already found him competent to stand trial." After Lasiter confirmed that he had assisted his counsel with the decision to plead guilty, Lasiter's counsel agreed and stated:

> In terms of—that's correct, Your Honor. In terms of the legal strategy, he is able to discuss with me his desire to plead guilty. And then his desire to waive a jury trial. And to also, in terms of

punishment, to elect the judge, you, to determine punishment as opposed to a jury. That is the extent of his ability to communicate with me in terms of legal strategy.

Lasiter also told the trial judge that he understood who represented him and who represented the State. The trial court specifically noted that Lasiter "exhibited appropriate courtroom behavior." Additionally, Lasiter's prior competency finding, while not controlling, is another consideration in determining whether the trial court should have *sua sponte* granted an additional competency hearing. *See Clark,* 47 S.W.3d at 217.

While being questioned and before pleading guilty, Lasiter wrote a note requesting a lie detector test. Lasiter's counsel informed the trial court that Lasiter's request did not relate to the choices before Lasiter that particular day, but explained that Lasiter believed a lie detector test would show that he was not worshiping Satan. The record reflects that Lasiter's counsel continued to maintain that Lasiter was not competent, but Lasiter's attorney agreed that Lasiter appeared to understand the admonishments the court had given him, recognized that he had certain rights, and appreciated the consequences of giving up those rights and entering a plea. Lasiter's counsel further acknowledged that his opinion that Lasiter remained incompetent was based on the same facts developed during Lasiter's first competency hearing. Lasiter's counsel added that, "for the record[,] . . . [Lasiter] was able to articulate reasons why he chose to plead guilty and also to choose his election for punishment."

Although the record of the guilty plea hearing reflects a significant impairment in Lasiter's ability to communicate orally, it also reflects that the trial judge asked multiple questions to assist her in evaluating Lasiter's competency. Lasiter also initialed a written document that states that he understood the proceedings. By initialing each paragraph in the document, Lasiter acknowledged he was mentally competent, he understood the nature of the charges and the admonishments given to him, and that he understood the consequences of his plea.

The record contains additional evidence that Lasiter understood the nature of the proceedings. For example, he signed a "Stipulation of Evidence." In it, Lasiter stipulated that he intentionally and knowingly caused Davis's death by shooting him. Before pleading guilty, Lasiter indicated to the trial court that he had read and understood the stipulation. Lasiter then pled guilty and advised the trial court that no one had forced him to plead guilty. Thus, before accepting Lasiter's plea, the record reflects that the trial judge made a significant effort to satisfy herself that Lasiter was competent.

On this record, we do not accept Lasiter's argument that the trial court had a duty during the guilty plea proceeding to *sua sponte* order additional competency proceedings. The record is sufficient to show that Lasiter understood the nature of the charge and the consequences of his guilty plea.

 Lasiter also contends the trial court should have *sua sponte* ordered additional competency proceedings based upon developments during the punishment proceeding. To support his claim that he was psychotic during the punishment proceeding, Lasiter relies in part on the video made of the stop on the night of the shooting. Lasiter also argues that his mother's testimony about his family's history of

mental illness, her concerns about his mental health at various stages in his life, and her efforts to get him help should have created a doubt in the trial court's mind as to Lasiter's competency. However, Lasiter's mother also testified to his improvement after the offense:

> Right now, I'm not afraid of him. I feel like he's more—a little bit better shape now. He's still—there is only one thing. He's got this one thing on the brain about the Lord, and every letter he writes has the same thing in it. That's the only thing that's pushing on his brain right now that he needs some medicine for.

■ The relevant time frame for determining a person's competency is at the time of the proceedings, not the time of the offense. *See generally Morris,* 214 S.W.3d at 168–69. Thus, the issue before the trial court was not whether Lasiter was competent at the time of the offense; instead, the issue was whether Lasiter was competent during the May 2007 proceedings.

Based on the record of the proceedings before us, it does not appear that Lasiter's competency had deteriorated after his first competency hearing. *See Fuller,* 253 S.W.3d at 228–29; *Clark,* 47 S.W.3d at 218. We conclude that Lasiter failed to demonstrate that the trial court abused its discretion in not, *sua sponte,* ordering a second competency hearing. *See Fuller,* 253 S.W.3d at 228; *Clark,* 47 S.W.3d at 217–18. We overrule Lasiter's fourth issue.

### Denial of Lasiter's Motion for New Trial without Holding a Hearing

In his fifth issue, Lasiter complains that the trial court did not hold an evidentiary hearing on his post-judgment motion for new trial. We first address the standard of review we apply to review a complaint that the trial court failed to provide an evidentiary hearing.

Courts of appeals have traditionally applied the same standard of review to motions for new trial raising competency claims as they have applied to motions raising more general types of issues. *See Beltran v. State,* No. 12–06–00390–CR, 2007 WL 4216541, at *1-*2, 2007 Tex.App. LEXIS 9337, at 3–4 (Tex.App.-Tyler Nov. 30, 2007, pet. dism'd) (not designated for publication); *Hill v. State,* No. 2–06–094–CR, 2007 WL 866476, at *9, 2007 Tex.App. LEXIS 2272, at *14 (Tex.App.-Fort Worth, Mar. 22, 2007, pet. ref'd) (not designated for publication), *cert. denied,* —— U.S. ——, 128 S.Ct. 1267, 170 L.Ed.2d 99, 76 U.S.L.W. 3440 (2008); *De La Cruz v. State,* Nos. 01–04–00176–CR, 01–04–00177–CR, 01–04–00178–CR, 2005 WL 564065, at *7, 2005 Tex.App. LEXIS 1534, at *12–13 (Tex.App.-Houston [1st Dist.] Feb. 24, 2005, pet. ref'd) (not designated for publication).[3] However, our court has previously noted that the Texas Court of Criminal Appeals might apply a bona fide doubt standard to competency issues raised in a motion for new trial. *Durgan v. State,* 259 S.W.3d 219, 222–24 (Tex.App.-Beaumont 2008, no pet.); *see also Durgan v. State,* 240 S.W.3d 875, 878 (Tex.Crim. App.2007). Recently, and without discussing the potential implications of the Texas Court of Criminal Appeals opinion in *Durgan,* two intermediate courts of appeals applied the traditional standard of review to competency issues raised in motions for new trial and held that a bona fide doubt

3. *See Durgan v. State,* 259 S.W.3d 219, 222 n. 2 (Tex.App.-Beaumont 2008, no pet.) (commenting that despite the 2003 statutory changes to the competency statutes, discussed in detail therein, the above-cited courts continued to apply the traditional motion for new trial standard to incompetency issues raised in the motion).

standard did not apply. *See Powell v. State*, No. 03–07–00548–CR, 2008 WL 3540067, *4, 2008 Tex.App. LEXIS 6230, at *10 (Tex.App.-Austin Aug.14, 2008, no pet.) (not designated for publication); *Ceasar v. State*, Nos. 01–07–00769–CR, 01–07–01028–CR, 2008 WL 2611927, at *3, 2008 Tex.App. LEXIS 4996, at *8 (Tex.App.-Houston [1st Dist.] July 3, 2008, no pet.) (not designated for publication).

 Nevertheless, we believe that the Court of Criminal Appeals would apply a bona fide doubt standard to competency issues raised in motions for new trial. Citing *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), the *Durgan* Court stated that a defendant's competency at the time of an adjudication hearing "raises a preliminary due-process issue that must be resolved before the adjudication process may begin." *Durgan*, 240 S.W.3d at 878. The Court additionally noted certain facts brought forth at the new trial hearing that supported a conclusion that would raise a bona fide doubt. *See id.* at 876. As we understand the implications of the opinion of the Court of Criminal Appeals in *Durgan*, we conclude that the bona fide doubt standard applies to the competency issues raised in Lasiter's motion for new trial.

*The Motion for New Trial and Its Accompanying Affidavit*

 In his post-judgment motion for new trial, Lasiter argued that new evidence concerning his competency necessitated an inquiry into whether he was competent during his plea and punishment proceedings.[4] The evidence attached to Lasiter's motion consisted of his letter to the trial judge, file-marked "Received" by the trial court on May 25, 2007, and an affidavit by Ellen Brown, an assistant to Lasiter's newly appointed appellate attorney, Kaye Stone.

In his letter to the trial court, Lasiter again expressed his desire to have a lie detector test to prove that he was not worshiping Satan to "save his soul." Because the trial court could determine that this was the same type of request that it had previously found insufficient to support further competency proceedings, it could reasonably conclude that the letter did not raise a bona fide doubt as to Lasiter's competency.

Lasiter additionally argues that further competency proceedings were required based on Brown's affidavit, which discusses a meeting with Lasiter that she attended with Stone on June 1, 2007. The affidavit reflects that Brown and Stone had difficulty understanding Lasiter because of his profound speech impairment. Nonetheless, the affidavit also reflects that Lasiter directed his appellate counsel to file a motion for new trial. The affidavit further reflects that Lasiter told Brown and Stone that he wanted to take a lie detector test because he believed that "only a lie detector test will prove to Jesus that he doesn't worship Satan."

As with Lasiter's letter to the court, we conclude that the affidavit does not raise a bona fide doubt about Lasiter's competency during the plea and punishment proceedings. The trial court was already aware of Lasiter's stated desire to take a lie detector test and his reasons for it. On

---

4. Lasiter's post-judgment motion for new trial asserted arguments about other grounds to grant a new trial; however, these arguments were not argued on appeal. Thus, we address only those arguments made by Lasiter in his brief. *See* Tex.R.App. P. 38.1(h).

this record, we find that the trial court could reasonably conclude that this additional request for a lie detector test did not create a bona fide doubt about Lasiter's competency during the relevant trial proceedings that resulted in his conviction and sentence. While the affidavit also identifies a difficulty in Brown's and Stone's ability to communicate with Lasiter, the trial court was also aware of Lasiter's communication problem, as well as Dr. Rosenblatt's opinion that this problem did not make him incompetent. Thus, given the similarity between this evidence and the evidence Lasiter used to support his claim of incompetency during the competency hearing, we find the trial court could reasonably conclude that Lasiter's post-judgment motion for new trial failed to create a bona fide doubt about Lasiter's competency during the plea and punishment proceedings. *See Fuller,* 253 S.W.3d at 228; *see also Durgan,* 259 S.W.3d at 224.

We hold the trial court did not abuse its discretion in failing to order an evidentiary hearing on Lasiter's motion for new trial, and we overrule Lasiter's fifth issue. Having found all of Lasiter's issues either waived or without merit, we affirm the order of the trial court.

AFFIRMED.