**Order issued December 10, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-18-00600-CR

————————————————

## KRISTIAN JOSEPH LAFLASH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 355th District Court**
**Hood County, Texas**
**Trial Court Case No. CR13693**

---

## ABATEMENT ORDER[1]

Appellant, Kristian Joseph Laflash, with an agreed punishment recommendation from the State, pleaded guilty to the second-degree offense of

---

[1] *See Bautista v. State*, 605 S.W.3d 520, 522 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

indecency with a child by sexual contact, and the trial court deferred adjudication of his guilt and placed him on community supervision for eight years. The State, alleging violations of the conditions of his community supervision, then moved to adjudicate appellant's guilt of the charged offense. After a hearing, the trial court found three allegations true, found appellant guilty, and assessed his punishment at confinement for eighteen years. In two issues, appellant argues that he was not mentally competent to waive his rights during the plea hearing or participate in the hearing to adjudicate guilt. Because we conclude the record contains a suggestion from a credible source that appellant may be incompetent, we hold that the trial court abused its discretion when it failed to conduct an informal inquiry into appellant's competency to stand trial during the hearing on the motion to adjudicate. We therefore sustain appellant's second issue, abate appellant's appeal, and remand to the trial court for further proceedings consistent with this order.

**Background**

Appellant was charged by indictment with indecency with a child by contact on February 8, 2017. After meeting with appellant and his family, appellant's counsel moved the trial court for a competency examination to determine whether appellant was competent to stand trial. The trial court granted the motion and appointed Dr. Barry Norman to perform the evaluation.

Dr. Norman evaluated appellant on March 10, 2017. On March 24, 2017, Dr. Norman issued a report in which he opined that appellant was "competent to stand trial at this time." Dr. Norman's opinions and findings were based on his clinical interview of appellant, a mental status examination, behavioral observations, verbal questioning, interviews with jail personnel, a review of appellant's jail medical records, incident reports, and a discussion with appellant's attorney. Dr. Norman attempted to speak with appellant's father, but he was not successful.

Dr. Norman opined in his report that appellant "is an individual with a diagnosable mental illness/emotional disturbance," namely, "Neurocognitive Disorder, mild, secondary to brain surgery" and "Borderline Intellectual Functioning." He explained that Neurocognitive Disorder is a

> diagnosis given when an individual exhibits multiple cognitive deficits, including memory impairment and a disturbance in executive functioning, i.e., planning, organizing and sequencing thoughts and speech. Other cognitive impairments are typically present. This disorder is attributable to brain surgery and placement of a shunt. Cognitive deficits identified must be sufficiently severe to cause impairment in occupational or social functioning and must represent a decline from a previous higher level of functioning.

Dr. Norman also explained that the term "Borderline Intellectual Functioning" describes someone "whose intellectual and adaptive functioning are below average, but do not meet the full criteria for a true intellectual disability." Dr. Norman opined that, despite his cognitive limitations, appellant does not appear "to meet the criteria for classification as a mentally retarded person, based on vocabulary, fund [sic] of

3

knowledge and complexity of thought." According to Dr. Norman, appellant's condition had "lasted or is expected to last continuously for at least one year."

With respect to appellant's ability to understand the charges and potential consequences of the pending criminal proceedings, Dr. Norman stated:

> Defendant appears to have a rational and factual understanding of charges, though is unsure of the potential consequences and penalties, stating this [sic] his has not discussed those issues with him. With prompting, defendant was able to discuss some issues regarding the alleged offense, but exhibited some embarrassment discussing the charges. Statements made by defendant were not indicative of mental illness. Defendant appears to have a basic understanding of legal concepts, but will need assistance provided by his attorney.

With respect to appellant's ability to participate in his own defense, Dr. Norman opined, among other things, that appellant "has the capacity to disclose facts, events and state of mind associated with the alleged offense," he "appears to have [an] adequate understanding of the pending charges and could provide details about history," and he "appears competent to assist defense counsel." Dr. Norman stated that appellant does not have "major comprehension difficulties" and "[w]hile [appellant] may be unclear regarding certain legal strategies, [he] demonstrated ability to be educated by counsel regarding issues that may be unclear."

Dr. Norman also stated that appellant "did not have an understanding of the various pleas, nor does he understand the implication of accepting an arranged plea bargain. However, [appellant's] responses were not suggestive of mental illness. [Appellant] is capable of being educated in these areas by his attorney." The trial

4

court's docket sheet reflects that the trial court received Dr. Norman's report on March 31, 2017.

Appellant pleaded guilty on November 7, 2017 to the offense of indecency with a child by sexual contact and signed a declaration of understanding regarding his competency to stand trial and waiver of rights. During the plea proceedings, appellant affirmed, in response to the trial court's questions, that his attorney had read the guilty plea memorandum to him and he understood it. He also affirmed that he understood that by signing the document he was "voluntarily giving up a lot of valuable rights that [he has] under the law," including the right to a jury trial and to testify in his own defense. Appellant further affirmed that he understood the charge against him and the range of punishment for the charge and told the trial court that he was not pleading guilty due to fear, threats, persuasion, or force. He also acknowledged that by signing the plea memorandum he was telling the court that he was "intelligently waiv[ing] and abandon[ing] the right of appeal in this case." At the conclusion of the hearing, the trial court entered an order of deferred adjudication, placing appellant on community supervision for eight years. The trial court certified that this was a plea-bargain case and, therefore, appellant did not have a right to appeal, and that appellant had waived his right to appeal.

On March 20, 2018, the State filed a motion to proceed with an adjudication of guilt, alleging that appellant violated the terms of his community supervision by

not paying court costs and fines in December 2017 and January 2018 and being inside the same residence as two children under the age of seventeen without an approved chaperone. On April 19, 2018, the State filed an amended motion to proceed with an adjudication of guilt in which it alleged that appellant had also violated the terms of his community supervision by purchasing, owning, or possessing sexually explicit material and admitting that he had masturbated to sexually explicit material that he had purchased, owned, or possessed.

On May 15, 2018, the trial court held a hearing on the State's motion. At the State's request, the trial court took judicial notice of all of the contents of the court's file and all prior proceedings in the case. Appellant pleaded "not true" to the State's allegation that he violated the terms of his community supervision by being inside the same residence as two children under the age of seventeen without an approved chaperone and pleaded "true" to the remaining allegations. Two witnesses testified at the hearing about appellant's mental status, including appellant's probation officer, Terri Meyer, and his father.[2]

As relevant here, Meyer testified that appellant was "mentally challenged" and that he had "struggled" with "the rules [and] with the limitations that were

---

[2] Two law enforcement officers also testified about the discovery of sexually explicit material on one of appellant's cell phones and appellant's admission that he had masturbated using the sexually explicit material. Appellant pleaded true to both allegations.

6

required" of him while on community supervision. When Meyer was asked why appellant had struggled with the rules, she testified, "Well, I mean, they're life-changing, and as far as the things that he did prior to probation and/or incarceration, he did things like mowing lawns. He rode his bicycle all over his neighborhood, and those are things that he was not able to do once probation started." According to Meyer, appellant had been receiving sex offender treatment while on community supervision, but he was only attending group meetings because he was not able to take the tests associated with treatment due to his low IQ of sixty. Meyer agreed that an IQ of sixty is "below the normal range." When asked if she believed that appellant "completely understood the rules and regulations that he had to comply with," Meyer testified, "there was some things that he struggled with" because of his low IQ.

Meyer testified that she made an unscheduled visit to the home appellant shared with his father in March 2018. When she arrived at the home, she saw appellant's father and two children between the ages of one and three in the front living room. Appellant, who was in his bedroom in the back of the home, told Meyer that he had been staying in his room because the children were in the home.

Appellant's father testified that appellant, who has an IQ of sixty-one or sixty-two, "[g]ets confused very often" and needs to have things explained to him more than once. "Some things he just doesn't get and -- he says he does, but he -- he doesn't." He also explained that his daughter, appellant's sister, had come by his

home with her two young sons the day Meyer visited. The boys were only in the home for an hour and appellant's father and sister were with the boys the entire time. Appellant's father testified that he made sure that appellant stayed in his room and had no interaction with the children. Although appellant's father and sister had completed chaperone training before Meyer's visit, which would have allowed them to supervise appellant's interactions with the children, neither had been certified as a chaperone. Appellant's father testified that he had not realized that appellant was able to access the internet with his cell phone, and that he would not allow appellant to have a phone if he were placed back on community supervision.

Appellant's father also testified that appellant has a medical condition that causes fluid to build up in his head. He had a shunt placed in his head when he was a child which drains the excess fluid away from his brain and he requires ongoing medical care to maintain the shunt. Appellant's father testified that appellant had been removed from his birth mother's care for medical neglect when he was a young child because she did not seek treatment for his condition. As a result of the delay in treatment, the excess fluid damaged his brain and caused him to have an unusually large head.

At the conclusion of the hearing, the trial court adjudicated appellant guilty of the charge of indecency with a child by sexual contact and sentenced him to eighteen years' imprisonment.

This appeal followed.

## Adjudication of Guilt

In his second issue, appellant argues that his due process rights were violated because he was incompetent when the trial court adjudicated his guilt in May 2018. He further contends that based on his father's and probation officer's testimony during the hearing on the State's motion to adjudicate guilt and statements in Dr. Norman's report, the trial court should have abated the hearing to evaluate his competency to stand trial at that time.

In Texas, an accused is presumed competent to stand trial unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. art. 46B.003(b). A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or a rational as well as factual understanding of the proceedings against the person. *Id.* art. 46B.003(a). The relevant time frame for determining a person's competence is at the time of the proceedings. *Lasiter v. State*, 283 S.W.3d 909, 925 (Tex. App.—Beaumont 2009, pet. ref'd).

The Code of Criminal Procedure establishes a two-step procedure trial courts must employ before concluding that a defendant is incompetent to stand trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). The first step is an informal inquiry, and the second step is a formal competency trial. *Id.* An informal inquiry is

triggered upon a suggestion from any credible source that a defendant may be incompetent. *Id.* (citing TEX. CODE CRIM. PROC. art. 46B.004(a), (c), (c–1)). On suggestion that the defendant may be incompetent to stand trial, the trial court must conduct an informal inquiry to determine whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. art. 46B.004(c). No further evidentiary showing is required, nor is the trial court required to have a bona fide doubt regarding a defendant's competency. *Id.* art. 46B.004(c–1); *see also Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013) (explaining that Legislature rejected bona fide doubt standard when it amended Article 46B.004). Some evidence of incompetency to stand trial is a quantum of evidence that is "more than none or a scintilla, that rationally may lead to a conclusion of incompetency." *Bautista*, 605 S.W.3d at 527 (quoting *Ex parte LaHood*, 401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013)).

Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors set forth in article 46B.024 of the Code of Criminal Procedure, or on any other indication that the defendant is incompetent within the meaning of article 46B.003. TEX. CODE CRIM. PROC. arts. 46B.004(c-1), 46B.024. The factors set out in article 46B.024 include the capacity of the defendant during criminal proceedings to (1) rationally understand the charges against him and the potential consequences of those pending charges,

10

(2) disclose to his defense counsel pertinent facts, events, and states of mind, (3) engage in a reasoned choice of legal strategies and options, (4) understand the adversarial nature of the criminal proceedings, (5) exhibit appropriate courtroom behavior, and (6) testify. *Id.* art. 46B.024(1)(A)–(F). Additional considerations include information regarding whether the defendant has a mental illness or an intellectual disability, "whether the identified condition has lasted or is expected to last continuously for at least one year," whether medication is necessary to maintain the defendant's competency, and "the degree of impairment resulting from the mental illness or intellectual disability . . . and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner." *Id.* art. 46B.024(2)–(5).

If a "trial judge finds that there is a suggestion of incompetency, he or she shall conduct an informal inquiry to determine 'if there is some evidence from any source' that would support a finding that the defendant is incompetent to stand trial." *Druery v. State*, 412 S.W.3d 523, 538 (Tex. Crim. App. 2013) (quoting *Ex parte LaHood*, 401 S.W.3d at 52–53). We review a trial court's decision to conduct an informal inquiry for abuse of discretion. *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009); *Bautista*, 605 S.W.3d at 530 (reviewing trial court's decision not to conduct informal inquiry for abuse of discretion). Under this standard, we do not substitute our judgment for that of the trial court but determine

11

whether the trial court's decision was arbitrary or unreasonable. *Montoya*, 291 S.W.3d at 426.

At the beginning of the May 2018 hearing on the State's motion to adjudicate guilt, the trial court took judicial notice of its record, which included the March 2017 report prepared by Dr. Norman. While Dr. Norman's evaluation provided historical information regarding appellant's intellectual deficiencies and competency in March 2017, the testimony of appellant's father and his probation officer at the adjudication hearing provided the court with recent and specific testimony in May 2018 regarding the degree of appellant's impairment resulting from his intellectual disability. TEX. CODE CRIM. PROC. art. 46B.024(2)–(5); *see generally Lasiter*, 283 S.W.3d at 909 (stating relevant time for determining person's competency is time of proceeding). For example, appellant's probation officer testified that appellant had not been fully participating in sex offender treatment because he was not able to take the necessary tests due to his abnormally low IQ of sixty and appellant's father offered similar testimony regarding appellant's low IQ. There is also testimony regarding appellant's difficulty comprehending the rules and requirements of his court-ordered community supervision.

The amount of information necessary to trigger an informal inquiry is low and can be satisfied with a suggestion from any credible source that a defendant may be incompetent. *See Boyett*, 545 S.W.3d at 563. Based on the record before us, we

conclude that the evidence presented at the hearing on the motion to adjudicate, including the testimony from appellant's father and probation officer, meets this minimal threshold and, therefore, the trial court was required at that point in time to conduct an informal inquiry to determine whether there was some evidence from any source that would support a finding that appellant was incompetent to stand trial. *See Clark v. State*, 592 S.W.3d 919, 925 (Tex. App.—Texarkana 2019, pet. denied) ("The amount of information necessary to trigger an 'informal inquiry' is low. It 'may consist solely of a representation from any credible source that the defendant may be incompetent.'"); *cf. Turner*, 422 S.W.3d at 694 (stating that although experts initially determined that defendant was competent to stand trial, "the trial court was effectively put on notice of the need to maintain vigilance to assure that the appellant's due process rights were preserved").

Accordingly, we hold that the trial court abused its discretion when it did not conduct an informal inquiry into appellant's competency during the hearing on the motion to adjudicate guilt. We therefore sustain appellant's second issue.

### Disposition

Having sustained appellant's second issue, we abate appellant's appeal and remand the case to the trial court. *See Turner*, 422 S.W.3d at 696–97 (abating appeal and remanding case to trial court for determination of whether it was feasible to conduct retrospective competency trial); *Bautista*, 605 S.W.3d at 530–31 (abating

13

appeal and remanding case to trial court for determination of whether it was feasible to conduct retrospective competency inquiry). On remand, the trial court shall, within thirty days, initially determine the feasibility of a retrospective competency inquiry given the passage of time, availability of evidence, and any other pertinent considerations. *See Turner*, 422 S.W.3d at 696 (citing 43 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 31:81, at 89–90 & n.10 (3d ed. 2011)); *Bautista*, 605 S.W.3d at 530–31. If the trial court determines that a retrospective competency inquiry is feasible, it shall conduct an informal inquiry into appellant's competency to stand trial. *Id.* at 531. If the informal inquiry establishes that there is "some evidence from any source . . . that would support a finding that [appellant] may be incompetent to stand trial," it shall conduct a formal competency trial. *Turner*, 422 S.W.3d at 692 (quoting TEX. CODE CRIM. PROC. art. 46B.004(c)). In making this determination, the trial court must consider only that evidence tending to show incompetency, "putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency." *Id.* (quoting *Ex parte LaHood*, 401 S.W.3d at 52–53). Regardless of whether the trial court deems a retrospective competency inquiry feasible or not, the record of the trial court's proceedings on remand shall be filed with this Court on or before ninety days from

14

the date of this order for reinstatement of appellant's appeal. *See Turner*, 422 S.W.3d at 697; *Bautista*, 605 S.W.3d at 531.

                                        Russell Lloyd
                                        Justice

Panel consists of Justices Keyes, Lloyd, and Landau.

Keyes, J., concurring.

Publish.   TEX. R. APP. P. 47.2(b).