In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00225-CR**
_____

**WILLIAM JOSHUA ZELLARS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 5**
**Montgomery County, Texas**
**Trial Cause No. 18-332525**

## MEMORANDUM OPINION

A jury convicted appellant William Joshua Zellars of driving while intoxicated, and the trial court assessed punishment at one year of confinement in the Montgomery County jail, but then suspended imposition of sentence, placed Zellars on community supervision for two years, and assessed a $2000 fine. Zellars filed a motion for new trial, and the trial court denied the motion. In two appellate issues, Zellars asserts that the trial court abused its discretion by refusing to grant a

1

mistrial and overruling his motion for new trial after the State violated the trial court's limine order. We affirm the trial court's judgment.

BACKGROUND

Zellars designated a partial reporter's record. Although a motion to supplement the partial reporter's record does not appear in the appellate record, a supplemental reporter's record that contains the excerpted testimony and voir dire examination of Department of Public Safety forensic analyst Yenjun Eric Ho was filed. Zellars did not file a statement of the points or issues he intended to raise on appeal.

In his first amended motion in limine,[1] Zellars requested the following:

Witness shall not mention in front of the jury that one of the two vacutainers/tubes of blood is drawn for the defense without first establishing that the statement is true. Such a statement can be established as true through blood alcohol and toxicology training manuals or Standard Operating Procedures. Nothing in blood alcohol and toxicology training manuals or Standard Operating Procedures is it stated that the second blood tube is for the defense. The only mention of reasoning of the second tube is through the Department of Public Safety's Physical Evidence Handbook where it states that "the second blood tube is a precautionary measure to provide an additional evidence sample for testing[. . . .] Further, if the witness can establish the statement is true[,] the witness shall not mention this fact in front of the

---

[1]The reporter's record reflects that the hearing on the first amended motion in limine occurred on June 24, 2019. However, the clerk's record indicates that Zellars's first amended motion in limine was not filed until July 10, 2019. Since the hearing on the motion indicates that matters not included in Zellars's original motion in limine, such as vacutainers, were discussed at the hearing, we presume that the first amended motion in limine was before the trial court at the hearing, but was not formally filed with the clerk until later.

2

jury unless [he] can first establish (1) that the vacutainer was in fact made available and provided to the defendant; or (2) lay the predicate and necessary steps to procure such evidence; (a) what is required for the court to grant such an order, and (b) the steps necessary after such order is granted to allow access by the defendant.

At the hearing on Zellars's motion in limine, the following colloquy occurred:

[Prosecutor]:  . . . [T]he only other thing in the First Amended Motion in Limine was the last section on vacutainers. There's a statement that says, Witness shall not mention in front of the jury that one of the two vacutainer[] tubes of blood is drawn for the Defense without first establishing it's true. And so I think just for the Defense is kind of general. So, again, I just want to clarify. I don't say that it was drawn for them, but, certainly, they can request that it be tested. I don't think that's an untrue statement.

THE COURT:  Right.

[Defense counsel]: . . . I had a witness, especially your witness, get on the stand and say that a second blood vial is drawn just for the [d]efense, and that's not true. And if he wants to say something like that, he needs to say what's required for us to get it. We've got to get a motion, put it in front of the Judge, we have to show him good cause, and he has to order it. . . . [H]e just gets up there and willy-nilly goes, Oh, yeah, the second one is for the [d]efense, and he leaves the false impression that no one ever hands it over to me or even tells me when it's at the lab. I never know where the blood is.

THE COURT:  You don't think that's something that's easy to clear up on cross-examination?

[Defense counsel]:  No. Once it's out of the bag, they look over at me and go, Oh, wow, anyone can test this blood, like, I automatically get it, and it's not true. I don't get it. It's a hassle for me . . . to get it. And, Judge, you may not be aware, the State's probably not aware, how I get that blood tested, where it has to go, specific labs it has to go to. . . . In [the] physical evidence handbook, [it says] the second blood tube is a precautionary measure to provide an additional evidence sample for testing. That means in case it breaks or if the first vial doesn't have

3

enough blood in it. It's not for the [d]efense, and to say that is a lie. So if he can prove that that statement is true, then he can go ahead and say it is.

THE COURT: All right. I'll grant it as a limine. That, to me – if it's that important to you, just make sure that foundation is laid, everything about what the purpose of the second tube is and then, obviously, you still have the ability to make the objection . . . if they're about to ask it.

[Prosecutor]: And that's for the statement that it is for the [d]efense . . . not that it's available for additional testing?

THE COURT: Right.

The trial judge signed an order granting Zellars's motion in limine, and the order specifically included the section entitled "VACUTAINERS."

The partial reporter's record reflects that Ho explained during voir dire examination by defense counsel that he had testified in another trial that studies show that ethanol in a blood sample will slowly turn into acetone over time if the sample is exposed to air. Ho explained that he ultimately filed an affidavit stating that he retracted said testimony because he could not find a study supporting it. The trial court denied Zellars's motion to exclude Ho as an expert witness. Before Ho's testimony on direct examination began, defense counsel stated to the prosecutor, "[D]on't say the two vacutainers are one provided for me – I don't know if you went over my [motion in limine]," and the prosecutor stated, "I did. I told him that it's available for additional testing." Defense counsel responded, "Okay."

4

During direct examination, Ho testified that the blood kit he received regarding Zellars contained "two gray-top tubes[,]" and he explained that he only needs one of those tubes. Ho explained that the second tube is available for additional testing by request from either the State or the defense, and Zellars did not object to this testimony. When the State called Ho to testify as part of its rebuttal, the prosecutor asked Ho how many vials are in the blood kit, and Ho again testified, "In the kit, there are two gray-top tubes." The prosecutor asked Ho whether the second vial is available "if either myself or [the] defense wants to test it[,]" and Ho responded affirmatively. The prosecutor then asked whether the second vial could be tested by an independent lab, and before Ho could answer, defense counsel objected that the prosecutor's question violated his motion in limine. The trial judge stated, "So what you're asking is that [the prosecutor] say no more about it?" and defense counsel stated, "Yes. She said its available for retesting." The trial judge stated, "Okay. So we'll just leave it at that." Defense counsel asked the judge to instruct the jury to disregard "[a]nything beyond the statement of available for retesting," and the trial judge agreed to so instruct the jury. Defense counsel also asked for a mistrial, and the court denied the request. The trial court sustained defense counsel's objection to the prosecutor's last question.

5

Zellars filed a motion for new trial, in which he contended that he is entitled to a new trial pursuant to Rule 21.3(g) of the Texas Rules of Appellate Procedure[2] "because the jury engaged in such misconduct that the defendant did not receive a fair and impartial trial." Zellars argued that "the State intentionally elicited testimony in violation of the court's order that vacutainers are available to the Defense for retesting." According to Zellars, he is entitled to a new trial because, in the presence of the prosecutor, defense counsel, and the trial judge in the jury room, "the jury unanimously and unequivocally stated that [it] took into account the fact that there was another vial available for [d]efense for testing."

At the hearing on the motion for new trial, defense counsel stated that, the jury unanimously stated that it considered the availability of a second vacutainer for the defense. The trial judge stated, "No, no, no, three of them said it." The prosecutor responded, "the jury . . . said that it was available for additional testing[;] they didn't say it was specifically for the [d]efense. One juror said, [w]ell, of course . . . the Defendant has access to that, it's his blood, and the rest said it's just available for testing by anyone, which is not untrue." The prosecutor argued that there was no violation of the motion in limine, nor is there any indication that the jurors considered anything that would have violated the motion in limine. The prosecutor

---

[2]Rule 21.3(g) provides that a defendant must be granted a new trial "when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial[.]" Tex. R. App. P. 21.3(g).

asserted that Ho never said that one of the two vacutainers was drawn for the defense. The judge stated, "I'm going to deny your motion [for new trial] because I think what it says is it's for testing by somebody, anybody."

ISSUES ONE AND TWO

In his first issue, Zellars argues that the trial court erred by refusing to grant a mistrial, and in his second issue, Zellars argues that the trial court erred by overruling his motion for new trial. We address issues one and two together.

Rule 34.6(c)(1) of the Texas Rules of Appellate Procedure provides that if the appellant requests a partial reporter's record, "the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues." Tex. R. App. P. 34.6(c)(1). An appellate court "must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues." Tex. R. App. P. 34.6(c)(4); *see also Zavala v. State*, 498 S.W.3d 641, 642 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

As mentioned above, the record does not reflect that Zellars filed a statement of points or issues to be presented on appeal, and the State argues that we must presume that the omitted portions of the reporter's record are relevant and support the trial court's judgment. We agree with the State. The record does not contain the State's voir dire, opening or closing arguments, the testimony of any witnesses other

7

than Ho, or the trial court's rulings on any pretrial motions other than Zellars's motion in limine. We must assume that the omitted portions of the reporter's record support Zellars's conviction. *See Zavala*, 498 S.W.3d at 642 (holding that appellate court must presume that the omitted portions of the reporter's record are relevant and support the trial court's judgment).

In addition, we review a trial court's ruling on a motion for new trial for an abuse of discretion, and we will reverse only if the trial judge's decision was clearly erroneous and arbitrary. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). A trial court abuses its discretion in denying a motion for new trial if no reasonable view of the record could support its ruling. *Id*. We also review the trial court's denial of a motion for mistrial for abuse of discretion, and we will reverse only in extreme circumstances in which the prejudice was incurable. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004); *see also Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (concluding that mistrial is appropriate only in extreme circumstances "for a narrow class of highly prejudicial and incurable errors[]"). We must uphold a trial court's ruling on a motion for mistrial if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

Considering the portions of the record designated for appeal and assuming that the omitted portions of the reporter's record support the trial court's judgment,

we cannot conclude that the trial court abused its discretion by denying Zellars's motion for new trial and his motion for mistrial. *See Riley*, 378 S.W.3d at 457; *Hawkins*, 135 S.W.3d at 76-77. To preserve a complaint for appellate review, the record must show that the appellant made his specific complaint known by a timely request, objection, or motion, and that the trial court ruled on the request, objection, or motion. *See* Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1). To be timely, a defendant must object when the ground for complaint is apparent or should be apparent. *Aguilar v. State*, 26 S.W.3d 901, 905 (Tex. Crim. App. 2000). "It is fundamental that a specific objection to inadmissible evidence be urged at the first opportunity in order to be considered timely." *Id.* at 905-06. Moreover, the denial of a motion in limine is not sufficient to preserve error in admitting evidence; rather, there must be a proper objection to the proffered evidence. *Lasiter v. State*, 283 S.W.3d 909, 915 (Tex. App.—Beaumont 2009, pet. ref'd); *see Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) (holding that if a defendant does not object until after an objectionable question has been asked and answered, the objection is untimely and any error is waived). Rule 44.2(b) requires that we disregard any alleged error unless it affected Zellars's substantial rights. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the alleged error had a substantial, injurious effect or influence on the outcome. *King v. State*, 953 S.W.2d 266, 271

(Tex. Crim. App. 1997). To conduct a harm analysis, we must review the entire record. *See Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

As mentioned above, the record reflects that when Ho initially testified that the second vacutainer tube is available for additional testing by request from either the State or the defense, Zellars did not object to this testimony. Furthermore, the portions of the record designated by Zellars do not reflect that Zellars objected to the trial court's failure to instruct the jury to disregard "[a]nything beyond the statement of available for retesting[]" after agreeing to do so during trial. Lastly, reviewing the available record and assuming, as we must, that the omitted portions of the record support the trial court's judgment, Zellars has failed to demonstrate that he was harmed by Ho's testimony. *See* Tex. R. App. P. 34.6(c)(4), 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (holding that the admission of inadmissible evidence is non-constitutional error that we will consider harmless if, after examining the record, we are reasonably assured the error did not influence the jury or had but slight effect); *Zavala*, 498 S.W.3d at 642. For all these reasons, we overrule issues one and two. Having overruled both of Zellars's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on March 4, 2021
Opinion Delivered June 23, 2021
Do Not Publish

Before Golemon, C.J., Kreger and Horton, JJ.